Lisa DEAN, Plaintiff–Appellant,

v.

**MOTEL 6 OPERATING L.P.; Motel 6 G.P., Inc.; Accor North America Corporation; and Accor S.A., Defendants–Appellees.**

No. 96–6435.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 1, 1997.

Decided Jan. 27, 1998.

William R. Garmer (argued and briefed), Savage, Garmer & Elliott, Lexington, KY, for Plaintiff–Appellant.

C. Mitchell Brown (argued and briefed), Joel H. Smith (briefed), Christopher J. Daniels, Nelson, Mullins, Riley & Scarborough, Columbia, SC, Ronald L. Green, Gregory K. Jenkins (briefed), Michael J. Cox, Boehl, Stopher & Graves, Lexington, KY, Thomas M. Cooper, Landrum & Shouse, Lexington, KY, for Defendants–Appellees.

Before: BOGGS and MOORE, Circuit Judges; and DOWD,* District Judge.

## OPINION

BOGGS, Circuit Judge.

Lisa Dean appeals the district court's grant of summary judgment, which was based on lack of personal jurisdiction. We affirm for reasons, discussed below, that differ from those used by the district court. We therefore take this opportunity to set forth the processes and standards that the district court should have used to determine personal jurisdiction. This inquiry should have focused primarily on whether a controlling minority shareholder actually "purposefully availed" itself of activities in the forum state. Additionally, though it reached the proper result, the district court's analysis should have been more deferential to the plaintiff, given the absence of an evidentiary hearing.

### I

Dean worked at the Motel 6 in Richmond, Kentucky, where on May 5, 1993 she was sexually assaulted by a guest of the motel. She sued Motel 6 Operating, Motel 6 G.P., ·Accor North America, and Accor, which are successive links in a corporate ownership chain. The suit, in diversity, alleged that the

defendants "negligently, carelessly, and recklessly supervised, maintained, and otherwise established policies causing the unsafe operation and management of the premises." In the meantime, Dean obtained Kentucky workers' compensation benefits.

Accor, a French joint stock company, moved to dismiss under FED.R.CIV.P. 12(b)(2) and (6) on the grounds that the court lacked personal jurisdiction. The district court denied the motion because there was insufficient evidence in the record from which to make a determination of jurisdiction. Discovery proceeded on the issues of jurisdiction, on the exclusivity of Kentucky's workers' compensation scheme, and on the possible liability of parent corporations notwithstanding that exclusivity, under *Boggs v. Blue Diamond Coal Co.*, 590 F.2d 655 (6th Cir.), *cert. denied*, 444 U.S. 836, 100 S.Ct. 71, 62 L.Ed.2d 47 (1979).

All of the defendants moved for summary judgment on the exclusivity issue. Accor North America and Accor also moved for summary judgment for failure to state a claim and for lack of personal jurisdiction. The district court granted the motions, dismissing all of the defendants from the case, and holding that Accor lacked sufficient contacts with Kentucky to warrant personal jurisdiction. Dean filed this timely appeal.

### II

The only questions presented on appeal are (1) whether the district court properly granted summary judgment for Accor for lack of personal jurisdiction; and (2) whether the district court improperly limited discovery and prejudiced the jurisdiction determination against Dean. Dean does not challenge the dismissal of the other defendants.

### A

The procedure for determining jurisdiction, and the standard of review on appeal, are clearly defined in this circuit:

> The case law establishes a settled procedural scheme to guide trial courts in the

---

* The Honorable David D. Dowd, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

exercise of this discretion. If it decides that the motion can be ruled on before trial, the court may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion.

*Serras v. First Tennessee Bank Nat'l Ass'n,* 875 F.2d 1212, 1214 (6th Cir.1989) (quotation marks omitted).

 Ordinarily, the plaintiff must prove jurisdiction by a preponderance of the evidence. *Ibid.* That standard does not apply in this case, however, because (although there was discovery) there was no evidentiary hearing on the jurisdiction question. The lack of such a hearing mandates a specific standard for weighing the evidence:

When ... a district court rules on a jurisdictional motion to dismiss ... without conducting an evidentiary hearing, the court must consider the pleadings and affidavits in a light most favorable to the plaintiff.... To defeat such a motion, [the plaintiff] need only make a prima facie showing of jurisdiction.

Furthermore, a court ... does not weigh the controverting assertions of the party seeking dismissal....

*CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1262 (6th Cir.1996) (emphasis, citations, and quotation marks omitted); *see Nationwide Mutual Ins. Co. v. Tryg Int'l Ins. Co.,* 91 F.3d 790, 792–93 (6th Cir.1996) (favoring interpretation expressed at *Conti v. Pneumatic Prods. Corp.,* 977 F.2d 978, 987 (6th Cir.1992) (Boggs, J., dissenting)); *Serras,* 875 F.2d at 1214.

We have explained elsewhere why this relatively light standard for a plaintiff in this situation is appropriate: "Any other rule would empower a defendant to defeat personal jurisdiction merely by filing a written affidavit contradicting jurisdictional facts alleged by a plaintiff." *Serras,* 875 F.2d at 1214. Although at first glance this appears to be a lopsided standard, the defendant has adequate recourse against a plaintiff who "merely [files] a written affidavit [asserting] jurisdictional facts":

First, a defendant who alleges facts that would defeat the court's personal jurisdiction can invoke the court's discretion to order a pretrial evidentiary hearing on those facts. If the written submissions raise disputed issues of fact or seem to require determinations of credibility, the court retains the power to order an evidentiary hearing, and to order discovery of a scope broad enough to prepare the parties for that hearing. At this stage, the burden on the party asserting jurisdiction quite properly increases. She must now establish that jurisdiction exists by the same standard that would obtain if the matter were deferred to trial: the preponderance of the evidence.

*Ibid.* (citations omitted). Furthermore, Accor can raise jurisdictional arguments during the trial as well. It is not as if this early determination, with the burden on the plaintiff so low, is the last word on jurisdiction. *See Conti,* 977 F.2d at 991 (Boggs, J., dissenting).

 As a final consideration, we would not use this standard if the reason for not having an evidentiary hearing was that there was no "real dispute" as to the facts or to the extent of discovery. *International Technologies Consultants, Inc. v. Euroglas S.A.,* 107 F.3d 386, 391 (6th Cir.1997); *Conti,* 977 F.2d at 980. If there was no such dispute, it would be a waste of resources to conduct an evidentiary hearing, but we would not prejudice defendants because of this desire for efficiency. In such cases, plaintiffs face the same burden as they would if there had been an evidentiary hearing: proof of jurisdiction by a preponderance of the evidence. In this case, however, Dean contests the denial to her of certain discovery, and the facts are in dispute, so this exception does not apply.

To summarize, then, the district court in this case should have required Dean only to make a prima facie showing of personal jurisdiction. The district court should have viewed the evidence in the light most favorable to Dean, and it should not have considered any controverting evidence submitted by Accor.

### B

 Unfortunately, the district court did not follow these standards. The only eviden-

tiary standard it cited was the regular summary judgment standard, and it expressly credited evidence submitted by Accor. It did this despite the existence of factual and discovery disputes.

The main disputed jurisdictional fact in this case is the level of control exercised by Accor over Motel 6 Operating. Indeed, Dean and the district court largely limited their analysis to this question, even though an alleged parent's control over a subsidiary is merely one factor of many to be considered. *See Third Nat'l Bank in Nashville v. WEDGE Group Inc.,* 882 F.2d 1087, 1090 n. 1 (6th Cir.1989), *cert. denied,* 493 U.S. 1058, 110 S.Ct. 870, 107 L.Ed.2d 953 (1990); *Velandra v. Regie Nationale des Usines Renault,* 336 F.2d 292, 296 (6th Cir.1964).

Dean argues that Accor controlled the operations of the Richmond Motel 6; Accor counters that it is merely an investor. Accor submitted an affidavit from Sven Boinet, perfunctorily but thoroughly denying any contacts between Accor and Kentucky. Dean, by contrast, notes deposition testimony in which Boinet is identified as "the person at Accor responsible for all hotel operations in which ... Accor [has] an interest." This is precisely the sort of contested question that should be resolved in an evidentiary hearing. The district court should not have considered (let alone credited) Boinet's affidavit in its ruling if it did not hold an evidentiary hearing.

The district court's error is not, however, sufficient to warrant reversal unless Dean can show that she would have prevailed using the proper standard; that is, Dean must show that the error was not harmless. We turn, therefore, to an independent analysis of the district court's jurisdiction over Accor.

C

Because federal jurisdiction in this case was pursuant to diversity of citizenship, we must look to Kentucky law to determine whether jurisdiction is appropriate. *Creech v. Roberts,* 908 F.2d 75, 79 (6th Cir.1990), *cert. denied,* 499 U.S. 975, 111 S.Ct. 1619, 113 L.Ed.2d 717 (1991).

The standards for establishing personal jurisdiction under the Kentucky long-arm statute are well-established:

.... The Kentucky long-arm statute has been understood to reach the limit permitted by the Constitution. Thus, the single issue is whether the jurisdiction sought is within the requirements of due process.

We have historically employed the following criteria to determine if personal jurisdiction is appropriate:

First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Tobin v. Astra Pharmaceutical Prods., Inc.,* 993 F.2d 528, 542–43 (6th Cir.) (citations omitted), *cert. denied,* 510 U.S. 914, 114 S.Ct. 304, 126 L.Ed.2d 252 (1993) (applying *Southern Machine Co. v. Mohasco Indust., Inc.,* 401 F.2d 374, 381 (6th Cir.1968)); *see Friction Materials Co. v. Stinson,* 833 S.W.2d 388, 390 (Ky.Ct.App.1992) (applying *Southern Machine* ).

The "sine qua non" of personal jurisdiction is the purposeful availment factor, *Southern Machine,* 401 F.2d at 381–82, under which the defendant must "purposefully avail[ ] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985). "This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Ibid.* (quotation marks and citations omitted).

■ This concern is particularly apt in this case, where Dean would have this court exercise jurisdiction over Accor because of the activity of Motel 6 Operating. Although Accor does have a controlling interest in Motel

6 Operating, a company does not purposefully avail itself merely by owning all or some of a corporation subject to jurisdiction. *See Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 781 n. 13, 104 S.Ct. 1473, 1482 n. 13, 79 L.Ed.2d 790 (1984) (jurisdiction over a corporation does not necessarily result in jurisdiction over holding company that owns it); *Shaffer v. Heitner,* 433 U.S. 186, 216, 97 S.Ct. 2569, 2586, 53 L.Ed.2d 683 (1977) (ownership of shares does not constitute purposeful availment); *American Greetings Corp. v. Cohn,* 839 F.2d 1164, 1170 (6th Cir.1988). Dean must provide sufficient evidence for us to conclude that Accor is being brought into court for something that it has done, not for something that Motel 6 Operating has done.

The Ninth Circuit has considered a similar case and rejected the argument for jurisdiction. In *AT & T v. Compagnie Bruxelles Lambert,* 94 F.3d 586 (9th Cir.1996), a Belgian holding company (GBL) was sued for an environmental matter related to an American corporation (Keystone) of which it was a majority owner. *Id.* at 588. As in this case, the district court made its jurisdictional ruling on the basis of affidavits and discovered materials, without the benefit of an evidentiary hearing. *Ibid.* The plaintiff submitted evidence that, *inter alia,* GBL dominated Keystone's board (which made anti-pollution expenditures), and that GBL had explored environmental issues relating to its purchase. *Id.* at 589 n. 4. The plaintiff was not able, however, to muster any evidence to outweigh the fact that GBL "conducted no business and maintained no offices" in the forum state. *Id.* at 590. The Ninth Circuit held that, without these indicia, domination of the board—which had apparently taken actions relevant to the environmental liability at issue in the case—did not necessarily constitute purposeful availment, and did not suffice in that case to confer personal jurisdiction. *Ibid.*

### D

■ Because there is even less evidence of purposeful availment in this case than in *Compagnie Bruxelles Lambert,* we need not determine today whether we would have reached the same result as the Ninth Circuit.

We agree, however, with the Ninth Circuit's emphasis on finding some overt actions connecting the defendant with the forum state. Applying that principle, we cannot find purposeful availment by Accor in this case.

Although Dean's evidence suggests an integrated business relationship between Accor and Motel 6 Operating, she does not provide any direct evidence of Accor's involvement in the operation of the Richmond Motel 6. There is no evidence in the record that Accor "did business" in Kentucky, or took *any* affirmative actions relating to Kentucky beyond merely owning (with a minority interest) Motel 6 Operating. There is, therefore, no purposeful availment and no personal jurisdiction. *Cf. WEDGE Group,* 882 F.2d at 1087 (finding purposeful availment in case where parent company's officers served as subsidiary's directors, and met regularly in forum state to "review and direct" operations of subsidiary).

Dean failed to adduce such evidence, despite extensive discovery. She submitted evidence that is not inconsistent with her inferences, to be sure, but she did not provide any direct evidence proving that Accor *actually* controls Motel 6 Operating or the Richmond Motel 6. Dean's self-described "strongest evidence" is an organizational chart showing that Accor has a 39.99% stake in a holding company, IBL S.A. IBL S.A. owns 99.86% of IBL Limited, Inc, which owns 100% of Motel 6 G.P., Inc. IBL Limited is the only limited partner and Motel 6 G.P. is the only general partner in Motel 6 Operating L.P., the company that owns and immediately controls the Richmond Motel 6. As noted above, however, proof of ownership is insufficient to show purposeful availment.

Dean also cites evidence that Motel 6 Operating holds itself out as "an Accor company," and suggests in its directory that travelers "look up our European cousin," an Accor-owned chain called Formule 1, but this too is merely suggestive of a business relationship, not proof that Accor had anything to do with the operation of the Richmond Motel 6. Dean next points to evidence that Accor renders management, consulting and financial services to Motel 6 Operating, in exchange for fees, but this information appears in the rec-

ord in a financial statement, which is concerned with the amount of the fees and does not give any indication as to the nature or extent of the "services." Neither has Dean provided any indication of what these management, consulting, and financial services are. They could conceivably constitute total control over Motel 6 operations, but they could just as easily represent specific peripheral services, or control of certain Motel 6 units unconnected to the Richmond motel; it could also be that Accor is only one of several firms providing such services. We cannot assume, without more evidence, that these vague words, stripped of their original context and lacking any other one, prove control or purposeful availment.

Next, Dean points out that Accor strategically places its people in management positions in the Motel 6 Operating hierarchy. All of the examples she cites, however, are of people who have left posts within the Accor hierarchy to fill positions of authority at Motel 6 Operating. Dean thus has shown only cross-pollination in corporate staffing, not the network of simultaneous board memberships that could support a finding that Accor actually runs Motel 6 Operating. *Cf. WEDGE Group*, 882 F.2d at 1087. Similarly, although Dean claims that Accor oversees Motel 6 Operating's budget, the evidence she provides shows only that the Motel 6 Operating budget is reported to Accor, not that Accor dictates its content.

Finally, Dean cites the 1994 Accor annual report, which refers to the company as "operat[ing]" 2,265 hotels worldwide, including the Motel 6 chain. The 1993 report lists "further improv[ing] Motel 6's performance" as one of the goals for the following year. An August 1990 Motel 6 Operating internal report, made shortly after Accor acquired the chain, lists as a goal for the remainder of 1990, to "adapt proper communication and integration with ACCOR." As with the previous evidence, however, these are vague pronouncements that are not inconsistent with Dean's inferences, but hardly constitute prima facie evidence of purposeful availment. We may *suspect* that Accor is in charge of Motel 6, but this evidence is too thin for us to *conclude* that it does. Although we are re-

quired to consider the evidence in a light most favorable to Dean, no light can be so favorable as to somehow close these evidentiary gaps.

### E

The second *Southern Machine* requirement is that the cause of action arise from the defendant's activities in the forum state. Although this does not require that the cause of action arise formally and directly from defendant's contacts with the forum, the cause of action must still "have a substantial connection with the defendant's in-state activities." *WEDGE Group*, 882 F.2d at 1091 (emphasis omitted) (quoting *Southern Machine*, 401 F.2d at 384 n. 27). In other words, "[o]nly when the operative facts of the controversy are not related to the defendant's contact with the state can it be said that the cause of action does not arise from that [contact]." *WEDGE Group*, 882 F.2d at 1091 (second alteration in original) (quoting *Southern Machine*, 401 F.2d at 384 n. 29). Given that there is no purposeful availment in this case, however, there is no reason to even attempt to analyze Accor's "activities" in Kentucky. At any rate, and despite extensive discovery, Dean has not provided evidence of *any* activities by Accor in Kentucky.

The final requirement, that the acts of the defendant have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable, requires a complex inquiry that we will not pursue, given that the lack of purposeful availment is dispositive. We do pause to note, however, that Accor receives deference under this test because of its status as a foreign company: "The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi Metal Indust. Co. v. Superior Court of California*, 480 U.S. 102, 114, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987); *see also Nationwide Mutual*, 91 F.3d at 797. The interests of the forum state, and of the "several states" and the federal government, "will be best

served by ... an unwillingness to find the serious burdens on an alien defendant outweighed by minimal interests on the part of the plaintiff or the forum State." *Asahi,* 480 U.S. at 115, 107 S.Ct. at 1034.

### III

■ Dean also challenges the district court's denial to her of certain discovery, claiming that because of this improper denial, she was prejudiced in her attempt to establish jurisdiction. "We review discovery matters under an abuse of discretion standard. Abuse of discretion is defined as a definite and firm conviction that the trial court committed a clear error of judgment." *Bowling v. Pfizer, Inc.,* 102 F.3d 777, 780 (6th Cir. 1996) (quotation marks and citation omitted), *cert. denied,* —— U.S. ——, 118 S.Ct. 263, 139 L.Ed.2d 190 (1997).

■ The discovery request was for a supplemental deposition of the manager of the Richmond Motel 6, Sandra Marcum, and for a series of Motel 6 Operating documents concerning safety policies. The scope of discovery had been limited to determining Accor's contacts with Kentucky and control over Motel 6; Dean apparently claims that these documents were requested to see if the hand of Accor was visible in them. The requests themselves do not evidence this intent, however, and on their face, the documents all concern Motel 6 Operating alone and not Accor. Furthermore, Dean had already had more than adequate opportunity to conduct discovery, including a previous deposition of Marcum, of Motel 6 Operating current officers, and of a former Motel 6 Operating officer in charge of security policies. Examining the record, we are not left with a "definite and firm conviction" that the district court erred.

### IV

For the foregoing reasons, we AFFIRM the district court.