**DIEBOLD, INC., Plaintiff,**

v.

**FIRSTCARD FINANCIAL SERVICES, INC., et al., Defendants.**

No. 5:00–CV–742.

United States District Court,
N.D. Ohio,
Eastern Division.

July 20, 2000.

Kenneth B. Baker, Michael D. Slodov, Javitch, Block, Eisen & Rathbone, Cleveland, OH, for Diebold Incorporated, plaintiff.

James H. Grove, Ronald C. Yingling, Nicola, Gudbranson & Cooper, Cleveland, OH, for Firstcard Financial Services, Inc., James B. Busi, Thomas J.F. Busi, defendants.

## OPINION AND ORDER

GWIN, District Judge.

On May 15, 2000, Defendants Firstcard Financial Services, Inc. ("Firstcard"), Thomas Busi, and James Busi filed a motion to dismiss this contract action for lack of personal jurisdiction [Doc. 14]. Alternatively, defendants seek to transfer this action to the Eastern District of California pursuant to 28 U.S.C. § 1404(a) or § 1406(a). For the reasons that follow, the Court finds that it lacks personal jurisdiction over Thomas Busi and James Busi. Rather than transfer the claims against the Busis to the Eastern District of California, the Court dismisses them without prejudice, However, the Court denies Firstcard's motion to dismiss and to transfer.

### I. Background

Plaintiff Diebold, Inc., is an Ohio corporation with its principal place of business in Stark County, Ohio. Plaintiff Diebold also has offices in California and North Carolina.

Defendant Firstcard Financial Services, Inc., is a Nevada corporation with its principal place of business in Jackson, California. Defendant Firstcard purchases and resells ATM machines throughout California, Utah, Oregon, Colorado, Idaho, and Wisconsin.

Defendant Thomas Busi is Firstcard's president. Defendant James Busi is Thomas Busi's father. Both are residents of Jackson, California.

On or about July 30, 1997, Defendant Firstcard entered into an "Authorized Diebold Reseller Agreement" with Plaintiff Diebold. The Reseller Agreement provided for the sale, resale, installation, and service of certain equipment to or on behalf of Firstcard. Thomas Busi, Firstcard's president, executed the agreement in Salt Lake City, Utah. All negotiations between Thomas Busi and Diebold representatives leading up to the Reseller Agreement took place in Salt Lake City and Pleasanton, California.

In the Reseller Agreement, Defendant Firstcard and Plaintiff Diebold agreed to a forum selection and choice of law clause. This clause reads:

> The construction and performance of this Agreement, and of all agreements and documents relating to it, shall be governed by the internal laws of the State of Ohio, USA. Each of the parties hereto irrevocably: consents to the jurisdiction of the state and federal courts located in Cleveland or Akron, Ohio; agrees that any action, suit or proceeding ... by or between the parties hereto shall be brought in any court in Cleveland or Akron, Ohio; and waives any objection which the party may now or hereafter have to the choice of forum whether such objection is based upon the lack of personal jurisdiction, improper venue, *forum non conveniens* or any other ground.

Complaint, Exhibit 1, Reseller Agreement, ¶ 18.

On or about October 21, 1997, Defendants Thomas Busi and his father, James Busi, executed a separate Guaranty Agreement with Diebold. As with the Reseller Agreement, the Busis executed the Guaranty Agreement in Salt Lake City. The Guaranty Agreement was consideration for a third agreement between the parties.[1] Shortly after executing the Guaranty Agreement, Firstcard began purchasing ATM machines through Diebold's offices in Pleasanton, California. Diebold then shipped the machines from its warehouse in North Carolina. Firstcard accepted these shipments in Jackson, California.

Firstcard says the ATM machines it received from Diebold between November 1997 and July 1999 had mechanical problems and would frequently breakdown. During this period, Diebold serviced the ATM machines.

Plaintiff Diebold claims it has not been fully compensated by Firstcard for products and services supplied. On March 17, 2000, Diebold brought an action against the defendants for breach of contract, breach of guaranty, an accounting and unjust enrichment. The defendants now move to dismiss this case for lack of personal jurisdiction or to transfer it to the Eastern District of California.

## II. Discussion

### A. Thomas Busi and James Busi

#### 1. Personal Jurisdiction

Defendants Thomas Busi and James Busi argue that the Court does not have personal jurisdiction over them. The Court agrees.

A district court considers two factors when determining whether it has *in personam* jurisdiction over a defendant. First, the Court must decide whether state law confers jurisdiction over the parties. Next, the court decides whether jurisdiction comports with due process—that is, whether the court's exercise of jurisdiction abides with "traditional notions of fair play and substantial justice." *Nationwide Mutual Ins. Co. v. Tryg Int'l Ins. Co., Ltd.,* 91 F.3d 790, 793 (6th Cir.1996) (quoting *International Shoe Co. v. State of Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (internal citation omitted)).

As the party asserting jurisdiction, the plaintiff bears the burden of showing that personal jurisdiction exists. *See CompuServe, Inc., v. Patterson,* 89 F.3d 1257, 1261–62 (6th Cir.1996); *Theunissen v. Matthews,* 935 F.2d 1454, 1458 (6th Cir. 1991). Generally, a plaintiff must prove jurisdiction by a preponderance of the evidence. *See Dean v. Motel 6 Operating L.P.,* 134 F.3d 1269, 1272 (6th Cir.1998). However, a district court ruling on such a motion without conducting an evidentiary hearing must consider the pleadings and affidavits in a light most favorable to the plaintiff. *See id.* (citing *CompuServe,* 89 F.3d at 1262).

Further, a plaintiff can defeat a motion to dismiss for lack of personal jurisdiction by making a *prima facie* showing of jurisdiction. *See Dean,* 134 F.3d at 1272. A plaintiff can show either general or specific jurisdiction. To show general jurisdiction, a plaintiff must show the defendant has "continuous and systematic" contact with the forum state. To show specific jurisdiction, a plaintiff must show "the defendant purposefully established 'minimum contacts' in the forum state." *Nationwide Mutual,* 91 F.3d at 794 (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

Applying these principles, the Court first decides whether state law confers jurisdiction over the defendants. Here, the laws of Ohio govern the Court. Ohio's long arm statute reads in relevant part:

(A) A court may exercise personal jurisdiction over a person who acts directly

---

1. This third agreement, labeled a Memorandum of Agreement, was dated October 29, 1997.

by an agent, as to a cause of action from the person's;

(1) Transacting any business in this state; ...

Ohio Rev.Code § 2307.382(A)(1).

Because the parties entered into several agreements, the Court analyzes each agreement in turn. Specifically, the Court must first decide whether Thomas Busi's signing of the Reseller Agreement confers jurisdiction over him. Next, the Court must decide whether Thomas and James Busi's signing of the Guaranty Agreement confers jurisdiction over them.

Thomas Busi, acting in his corporate capacity as President of Firstcard, executed the original Reseller Agreement with Plaintiff Diebold. As explained below, the Court finds that the forum selection clause in the Reseller Agreement does not confer jurisdiction over Thomas Busi.

Corporate officers are generally not subject to personal jurisdiction due to the "fiduciary shield" doctrine. The doctrine holds that "if an individual has contact with a particular state only by virtue of his acts as a fiduciary of the corporation, he may be shielded from the exercise, by that state, of jurisdiction over him personally on the basis of that conduct." *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 902 (2d Cir.1981).

■ Ohio courts apply this doctrine with certain limitations. *See Walker v. Concoby*, 79 F.Supp.2d 827 (N.D.Ohio 1999) (discussing the doctrine and its application by Ohio courts). Ohio courts do not apply the doctrine if: (1) a non-resident defendant personally involves himself in transactions which give rise to the cause of action and (2) the non-resident defendant was physically present in the state. *See, e.g., Heritage Funding & Leasing Co. v. Phee*, 120 Ohio App.3d 422, 698 N.E.2d 67 (1997); *Galloway v. Lorimar Motion Picture Mgmt., Inc.*, 55 Ohio App.3d 78, 562 N.E.2d 949 (1989). Thus, if Thomas Busi was involved in negotiating the Reseller Agreement and was physically present in Ohio, the fiduciary shield doctrine would not bar this Court from exercising personal jurisdiction over him.

■ Although Thomas Busi was actively involved in the negotiations which led to his signing the Reseller Agreement, he was never physically present in Ohio. The parties both negotiated and signed the agreement in Salt Lake City. Therefore, the fiduciary shield doctrine applies to Thomas Busi. Accordingly, this Court does not have personal jurisdiction over him based on his signing the Reseller Agreement.

■ Similarly, Thomas Busi's ad James Busi's signatures on the Guaranty Agreement do not confer personal jurisdiction. The Busis signed the Guaranty Agreement on October 21, 1997. The guaranty was purportedly in consideration of another agreement between the parties which they anticipated entering one week later. The Guaranty Agreement referred to this third agreement as a "Memorandum of Agreement."

Although labeled a "Guaranty", the agreement has characteristics of both a guaranty and a surety agreement.[2] In either case, the Court would not have jur-

---

2. An Ohio court summarized the differences between a surety and a guaranty agreement as follows:

" '... The surety joins in the same promise as his principal and is primarily liable; *the guarantor makes a separate and individual promise and is secondarily liable.... [L]iability of guarantor is ... secondary and collateral*, while that of surety is original, primary, and direct. In case of suretyship there is but one contract, and surety is bound by the same agreement which binds his principal, while in case of guaranty there are two contracts, and guarantor is bound by independent undertaking.' "
*Teramar Corp. v. Rodier Co.*, 40 Ohio App.3d 39, 531 N.E.2d 721, 723 (1987) (quoting Black's Law Dictionary 1441–1442 (6th Ed.1990)). In the present case, the Guaranty Agreement indicated that the Busis' liability would be "direct and primary" with no condition that Diebold first seek remedy against Firstcard.

isdiction over the Busis. Ohio courts hold that simply signing a guaranty or a surety agreement, without more, does not rise to "transacting any business." *See, e.g., Teramar Corp. v. Rodier Co.*, 40 Ohio App.3d 39, 531 N.E.2d 721, 723 (1987) (finding no personal jurisdiction over defendant who signed agreement labeled "guaranty," yet more in the nature of a surety agreement); *Mustang Tractor & Equipment Co. v. Sound Environmental Services, Inc.*, 104 Ohio Misc.2d 1, 727 N.E.2d 977, 982 (Ohio Com.Pl.1999) (executing a guaranty agreement that was negotiated, signed, and performed out of state was not "transacting any business" for purposes of Ohio's long-arm statute).

All prior negotiations between the parties took place in either Salt Lake City or Pleasanton, California. The Busis executed the Guaranty Agreement in Salt Lake City. There is no evidence that either Thomas or James Busi solicited or transacted business in Ohio. Accordingly, the Court finds it does not have personal jurisdiction over Thomas or James Busi.

Because Ohio's long arm statute does not confer personal jurisdiction, the Court need not address whether exercising jurisdiction over Thomas and James Busi would be proper under a due process analysis. *Cooper v. Digital Processing Systems, Inc.*, 182 F.R.D. 242, 252 (N.D.Ohio 1998) ("If the Ohio long-arm statute does not provide a basis for the exercise of personal jurisdiction over the nonresident [party], jurisdiction is unavailable even if the exercise of such would not violate due process.") (quoting *General Acquisition, Inc. v. Gencorp Inc.*, 766 F.Supp. 1460, 1485 (S.D.Ohio 1990)).

### 2. Transfer

■ Upon the Court's finding that it does not have personal jurisdiction, the Busis seek dismissal of the claims against them. In the alternative, the Busis ask the Court to transfer the action to the Eastern District of California pursuant to Title 28, Section 1406(a) of the U.S.Code.

The decision to dismiss or transfer a case under § 1406(a) is "within the district court's sound discretion." *First of Michigan Corp. v. Bramlet*, 141 F.3d 260, 262 (6th Cir.1998). "Unlike section 1404(a) . . . section 1406(a) does not require that the district court have personal jurisdiction over the defendants before transferring the case." *Pittock v. Otis Elevator Co.*, 8 F.3d 325, 329 (6th Cir.1993) (citing *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962)).

the statute reads in pertinent part:

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

28 U.S.C. § 1406(a).

Ohio is not the proper venue for Plaintiff Diebold's cause of action against Thomas Busi and James Busi.[3] "Under § 1406(a) when a district court considers a case in which venue is improper, it is directed to 'dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.'" *Wallace v. Whitt*, 935 F.2d 271 (Table), 1991 WL 104246 (6th Cir.1991). The interests of justice do not warrant the transfer of this case.

---

**3.** In cases where jurisdiction is based solely on diversity of citizenship, an action may only be brought in one of the following districts: (1) a judicial district where any defendant resides, if all defendants reside in the same State (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial dis-

trict in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought. Title 28 U.S.C. § 1391(a). This Court has already found that the Busis are not subject to the personal jurisdiction of the Court. Neither of the Busis reside in Ohio and none of the events which gave rise to the action occurred in Ohio.

Transfer of this case would burden defendants as well as plaintiffs because both would have to pursue similar claims in separate forums.

Further, dismissal of the action against Defendants Thomas and James Busi would not prejudice Plaintiff Diebold. Because this is a contract action, the law of the state where the contract was made governs. *See Nationwide Mut. Ins. Co. v. Ferrin,* 21 Ohio St.3d 43, 487 N.E.2d 568 (1986) ("[I]t is well-settled in Ohio that in cases involving a contract, the law of the state where the contract is made governs interpretation of the contract.")

The Guaranty Agreement between the parties was executed in Utah. The Utah statute of limitations for written contract actions is six years. U.C.A.1953 § 78–12–23. The guaranty was executed on October 21, 1997. Diebold has ample time remaining to bring suit against Thomas and James Busi in a proper forum. Accordingly, the Court denies the Busis' motion to transfer and dismisses the claim against them without prejudice.

B. Firstcard Financial Services, Inc.

1. Personal Jurisdiction

Defendant Firstcard maintains that this court lacks personal jurisdiction over the company. The Court disagrees.

■ As noted earlier, the Reseller Agreement contains a choice of law and a forum selection clause. Federal courts hold that forum selection clauses that have been freely bargained for are *prima facie* valid and enforceable. *See, e.g., Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 593–594, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991) (enforcing a nonnegotiated forum selection clause between an individual and a corporation); *M/S Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 12–13, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972) ("[A] freely negotiated private international agree-

ment, unaffected by fraud, undue influence, or overweening bargaining power ... should be given full effect.")

■ The Ohio Supreme Court has held that a forum selection clause contained in a commercial transaction is valid and enforceable absent evidence of fraud or overreaching.[4] *See Kennecorp Mtge. Brokers, Inc. v. Country Club Convalescent Hospital, Inc.,* 66 Ohio St.3d 173, 610 N.E.2d 987 (1993). A party challenging a forum selection clause must clearly show that enforcement would be unreasonable or unjust. *See id.* at 989.

Firstcard fails to show that the original Reseller Agreement between itself and Plaintiff Diebold is the result of unequal bargaining positions or that its enforcement would be unreasonable or unjust. Therefore the Court finds the forum selection clause valid and denies Firstcard's motion to dismiss for lack of personal jurisdiction.

2. Transfer

■ Defendant Firstcard requests that the Court transfer the pending action to the Eastern District of California. Title 28, Section 1404(a) of the U.S.Code states, in pertinent part:

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a). This statute permits transfer to a district where the case might have been brought originally. A proper district is one which enjoys proper venue, subject matter, and territorial jurisdiction. *See Bacik v. Peek,* 888 F.Supp. 1405, 1414 (N.D.Ohio 1993).

In considering a motion to transfer under § 1404(a), the Court must consider several factors. Among these factors are

---

4. The Sixth Circuit Court of Appeals has indicated that a federal court sitting in diversity jurisdiction "may apply either Ohio law or federal law in determining the enforceability

of a forum selection clause, since each treat clauses in a similar manner." *General Electric Company v. G. Siempelkamp,* 29 F.3d 1095, 1098 n. 3 (6th Cir.1994).

"the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'" *Moses v. Business Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir.1991) (citing *Stewart v. Ricoh*, 487 U.S. 22, 30, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988)).

Defendant Firstcard must show by a preponderance of the evidence that transfer is warranted, despite the existence of a forum selection clause. *See ITC v. Companhia Fabricadora de Pecas*, 973 F.2d 487, 488 (6th Cir.1992) (enforcing forum selection clause, which required litigation of disputes in Brazil, despite fact that Brazil had no substantial relationship with dispute, negotiations occurred in Ohio, and evidence and witnesses were located Ohio). As the following analysis of the relevant factors shows, Defendant Firstcard has not met its burden.

First, wherever this action is pursued, one of the parties and some witnesses will be inconvenienced. The venue transfer provision of § 1404(a) "is not meant to merely shift the inconvenience to the Plaintiff." *Moses*, 929 F.2d at 1137. In fact, transfer of venue is inappropriate where it would serve only to transfer the inconvenience from one party to another. *See Int'l Union*, 875 F.Supp. at 433.

Virtually all of Firstcard's witnesses reside in California. Plaintiff Diebold's witnesses reside primarily in Ohio. Due to the facts surrounding the transactions, other witnesses may be called who reside in Utah, Oregon, Colorado, and Wisconsin. The status of the witnesses and parties does not weigh strongly in favor of transfer.

Second, a plaintiff's choice of forum should be given weight when deciding whether to grant a motion to change venue. *See Lewis v. ACB Business Servs.,*

*Inc.*, 135 F.3d 389, 412 (6th Cir.1998). The choice of forum, however, is not a dispositive factor. *See id.*

Plaintiff Diebold is headquartered in Ohio. Those with knowledge of the negotiations and transactions with Defendant Firstcard reside in Ohio. In this case, Diebold's choice of forum should be accorded at least as much weight as Firstcard's interest in trying the case in California.

Finally, the interests of justice do not weigh in favor of transfer. A court should give the most consideration to "which jurisdiction can best serve the ends of justice by an expeditious and effective adjudication" when deciding whether to transfer a case pursuant to 28 U.S.C. § 1404(a). *See Parker–Hannifin Corp. v. Samuel Moore and Co.*, 436 F.Supp. 498 (N.D.Ohio 1977).

Firstcard says that the relative docket congestion for the Northern District of Ohio in and of itself weighs in favor of transferring this action to the Eastern District of California. In its memorandum, Firstcard cites to the 1999 Judicial Caseload Profile Statistics in a comparison of the each district's docket congestion.[5]

The fact remains, however, that this Court has established a schedule that will resolve this case within the next four months. the Court finds no indication that this case could be more efficiently resolved if it were transferred.

For these reasons, the Court denies Firstcard's motion to transfer.

### III.  Conclusion

The Court lacks personal jurisdiction over Thomas Busi and James Busi. Rather than transfer the claims against the Busis to the Eastern District of California, the Court dismisses them without prejudice. However, the Court does have personal jurisdiction over Firstcard and denies its

---

**5.** According to Firstcard the total number of civil cases in the Northern District of Ohio is 6,833 while the Eastern District of California has 4,196.

motion to dismiss as well as its motion to transfer.

IT IS SO ORDERED.