Richard K. NIEMI, et al., Plaintiffs,

v.

NHK SPRING CO. LTD., et al., Defendants.

No. 02–70782.

United States District Court, E.D. Michigan, Southern Division.

Aug. 8, 2003.

John C. Dougherty, Robin H. Kyle, Detroit, MI, for Plaintiffs.

Patrick F. Hickey, James F. Hermon, Detroit, MI, for Defendants.

## AMENDED OPINION AND ORDER

FEIKENS, District Judge.

Plaintiff filed suit against New Mather Metals (NMM) and its parent corporation NHK Spring Co. for breach of contract and misappropriation of trade secrets. Parent corporation NHK Spring filed this motion to dismiss for lack of personal jurisdiction. Fed.R.Civ.P 12(b)(2). Plaintiff contests this motion on the grounds that personal jurisdiction is proper in Michigan, and alternatively requests an order transferring this action to the United States District Court in Ohio.

### Background

Plaintiff allegedly created a new process for the development, design and manufacture of stabilizer bars used in the manufacture of automobiles. He claims that in 1990, he disclosed this process to NMM, a company that produces stabilizer bars for auto plants.[1] The alleged agreement provided that defendant would be allowed to use plaintiff's trade secret process in exchange for defendant's secrecy and its promise to award plaintiff the exclusive right to perform all design work for NMM. Plaintiff claims that in 1998 he discovered that defendant had allowed other individuals to design tools for NMM, and had not protected the secrecy of plaintiff's designs.

NHK Spring is a Japanese corporation being sued in its capacity as parent corporation for NMM, a Delaware corporation with facilities in Ohio. Plaintiff implicates NHK Spring on the theory that it exercised control over NMM and that NMM's alleged breach of contract was done at the behest of NHK Spring. Defendant NHK Spring claims that it is not amenable to suit in Michigan because it has no contacts with the state, its subsidiary is based in Ohio and all actions occurred there.

A hearing on this motion was held on October 3, 2002, in which both parties were instructed to submit supplemental briefs on the issue of personal jurisdiction, summarizing deposition testimony as it applies to the factors articulated in *Southern Machine Company v. Mohasco Industries Inc.*, 401 F.2d 374 (6th Cir.1968). A motion to compel discovery was heard on December 10, 2002 in which discovery was extended and defendants were ordered to answer plaintiff's interrogatories. On February 4, 2003, discovery was again extended, and the parties were instructed to submit supplemental briefs on the issue of

jurisdiction. This court held plaintiff's motion to compel discovery in abeyance pending submission of the parties' supplemental briefs on jurisdiction.

### Discussion

■ To avoid dismissal where there has been no evidentiary hearing, a plaintiff need only present a *prima facie* case for jurisdiction. *Kerry Steel v. Paragon Industries* 106 F.3d 147, 148 (6th Cir.1997). A court must consider all affidavits and pleadings in a light most favorable to plaintiffs, and does not weigh the controverting assertions of the party seeking dismissal. *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir.1998).

### I.

■ A federal court may exercise personal jurisdiction over an out-of-state defendant in a diversity case only to the extent that the forum state could do so. *CompuServe, Inc., v. Patterson*, 89 F.3d 1257, 1262 (6th Cir.1996). The defendant must be amenable to suit under the forum state's long-arm statute and the due process requirements of the Constitution must be met. *Reynolds v. International Amateur Athletic Fed'n*, 23 F.3d 1110, 1115 (6th Cir.1994), cert. denied, 513 U.S. 962, 115 S.Ct. 423, 130 L.Ed.2d 338 (1994).

■ Once a party is found to have satisfied the Michigan long-arm statute, due process mandates that defendant "have certain minimum contacts" with the forum state, such that the exercise of personal jurisdiction "does not offend 'traditional notions of fair play and substantial justice'" *International Shoe v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The critical question which minimum-contacts analysis seeks to answer is

---

1. While no formal contract has been produced, plaintiff has submitted a series of purchase orders from NMM for design work. Pl.Ex. 1–2.

whether "the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). The Supreme Court has "emphasized that parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 473, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

■ In analyzing the due process limits of personal jurisdiction, a distinction is made between "general jurisdiction" and "specific jurisdiction." *Burger King Corp.,* 471 U.S. at 472, 105 S.Ct. 2174. In a case of general jurisdiction, a defendant's contacts with the forum state are of such a "continuous and systematic" nature that the state may exercise personal jurisdiction even if the action is unrelated to the defendant's contacts with the state. *Perkins v. Benguet Consolidated Mining Co.,* 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952). In a specific jurisdiction case, "a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). In this case, NHK Spring's contacts with Michigan are not of a "continuous and systematic" nature such that Michigan could maintain personal jurisdiction over defendant in an action unrelated to its Michigan contacts. Thus, personal jurisdiction, if it exists, must be specific jurisdiction.

## II.

In *Southern Machine,* the Court of Appeals for the Sixth Circuit set forth a three-part test for determining whether,

consistent with due process, personal jurisdiction may be satisfied:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

401 F.2d at 381.

The significance of the first requirement, purposeful availment, is that it "allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit," *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), and "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous' or 'attenuated' contacts." *Id.* at 299, 100 S.Ct. 559.

The second *Southern Machine* requirement is that "the cause of action must arise from the defendant's activities in Michigan." *Dean v. Motel 6 Operating L.P.,* 134 F.3d 1269, 1272 (6th Cir.1998). This does not require the cause of action to arise directly and formally, only that the cause of action "have a substantial connection with the defendant's in-state activities." *Id.* In other words, "only when the operative facts of the controversy are not related to the defendant's contact with the state can it be said that the cause of action does not arise from that contact." *Id.* quoting *Third National Bank v. WEDGE Group Inc.,* 882 F.2d 1087 (6th Cir.1989).

The final *Southern Machine* requirement is that "the acts of the defendant or consequences caused by the defendant

must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *WEDGE Group*, 882 F.2d at 1092. This requirement involves "a determination of whether the [forum state] has an interest in resolving the conflict at issue." *Id.*

### III.

■■■ Mere ownership of a subsidiary that conducts business in the forum state is one factor which weighs in favor of sufficient minimum contacts, but it is not of itself significant enough to establish personal jurisdiction over the parent corporation. *Velandra v. Regie Nationale des Usines Renault*, 336 F.2d 292, 297 (6th Cir.1964). However, a court may also exert jurisdiction over a parent corporation for the acts of its subsidiary based on the theories of attribution or merger. *In re Telectronics Pacing Systems, Inc.*, 953 F.Supp. 909, 919 (S.D.Ohio 1997). Attribution can be explained as follows:

> The attribution test implies that the in-forum subsidiary is acting on behalf of the absent parent. Thus, the Court attributes the subsidiary's contacts to the parent because the parent "purposefully avails" itself of doing business in the forum by accessing the market through a subsidiary.

*Id.* Under the merger theory, the two entities are so closely aligned that it is reasonable for the parent to anticipate being haled into court in the forum because of its relationship with the subsidiary. *Id.*

In *Third National Bank v. WEDGE Group Inc.*, 882 F.2d 1087 (6th Cir.1989), a Tennessee bank (Third National), sued a Texas parent corporation (WEDGE) in Tennessee for the debt of the parent's wholly-owned Tennessee subsidiary (TRC). WEDGE moved to dismiss for lack of personal jurisdiction. In finding that WEDGE purposefully availed itself in Tennessee, the Six Circuit relied upon the following facts:

> First, from 1978 to 1986, WEDGE was the 100% owner of TRC, a corporation that, along with its own subsidiaries, conducted business in Tennessee. Second, WEDGE was not a mere passive owner of TRC; from 1982 to 1986 WEDGE officers served as TRC directors and met regularly—as often as monthly—in Tennessee to review and direct TRC's operations.... Fourth, in 1985, WEDGE officers participated in negotiations between Third National and TRC regarding the Third National–TRC third amended loan agreement, and, in order to induce Third National to enter the amended loan agreement, WEDGE deposited $7.5 million in a checking account maintained at a Third National branch in Tennessee....

*WEDGE Group*, 882 F.2d at 1090.

Relying in large part on the analysis used in *WEDGE Group*, this court found specific personal jurisdiction over a parent corporation based upon its involvement with the acts of its subsidiary in the state of Michigan. *Transportation Communications International Union v. Sultran*, 187 F.Supp.2d 880 (E.D.Mich.2002).[2] In *Sultran*, the parent corporation was found to be "actively involved in directing the operations" of its subsidiary, PDS USA, and its board members served "simultaneously." *Id.* at 885. Not only did the parent corporation fund the subsidiary's activities in Michigan, this court found that the parent corporation's eventual cut off of funding gave rise to the cause of action. *Id.* at 886.

---

**2.** As part of a settlement agreement, the parties in *Sultran* stipulated that an order should be entered, vacating my opinion on personal jurisdiction as it applied to them.

## IV.

Plaintiff argues that defendant NHK Spring caused a breach of contract to occur through its subsidiary NMM. Plaintiff asserts that the basis for jurisdiction over NHK Spring is evidenced by the following: it assigned employees and directors to NMM, approved major decisions and by inference, affected the formation and breach of plaintiff's contract with NMM.

First, plaintiff contends that various NHK Spring employees were assigned to New Mather Metals. For instance, the four member board of directors of NMM, consisting of Messrs. Ishakawa, Shigeoka, Sugiyama and Shiota, was assigned by NHK Spring. *Id.* at 25. Kazuo Shiota, a current member of the NMM Board of Directors, was transferred back and forth from NHK Spring to NMM (Shiota, pg. 10–23). Ken Takahashi, the current Technical Director at NMM, was assigned to his position by NHK Spring. (Takahashi, pg. 9). The current treasurer of NMM, Yasuaki Tsuji, was transferred to his post from NHK Spring. (Tsuji, pg. 9).

Second, plaintiff claims that NMM reports to NHK Spring in the form of monthly performance reports and seeks approval over major decisions. To substantiate this claim, plaintiff submits the testimony of Mr. Takahashi, stating that New Mather is required to send monthly performance reports to NHK Spring. (Takahashi, pg. 23). The deposition testimony of Denzil Sheckler, a tool engineer who retired from NMM in 1992, confirms that NHK Spring approved major decisions made at NMM during his tenure (Sheckler, pg. 90). He testified that officials from NHK Spring attended "engineering meetings" at NMM approximately once every three months. *Id.* at 89. Albert Blackwood, the former Engineering

Manager at NMM, described the decision making process as follows, "We were able to make a lot of decisions but with a hand on our shoulder" (Blackwood, pg. 75). Mr. Blackwood testified that NHK Spring was involved in the management of NMM "in the form of the plant manager, controller and others." *Id.* at 76.

Finally, plaintiff contends that NHK Spring caused an act to occur in Michigan that is the subject of this litigation. Plaintiff urges this court to infer from the deposition testimony that NHK Spring approved major decisions made by NMM, that NHK Spring would have approved any contract with plaintiff.[3] Plaintiff claims that the deposition testimony of Raul Cornelius supports the contention that the cause of action arises from defendant's activities in Michigan. Mr. Cornelius testified that he gave drawings made by plaintiff to a company called Premier, located in Monroe, Michigan. (Cornelius, pg. 161–2). Mr. Cornelius also testified that he shared plaintiff's drawings with a company called Riverside, located in Genoa, Ohio. *Id.* at 167. However, Mr. Cornelius indicated that no one directed him to share the drawings with other design shops, rather, he called it a "personal decision." *Id.* at 271. Plaintiff testified that another NMM employee, Ron Malcolm, told him, "Raul [Cornelius] is probably getting his direction from the Japanese." (Niemi, pg. 155).

## V.

■ Accepting all of plaintiff's allegations as true for the purposes of this motion, there is insufficient evidence that NMM is a mere alter ego of NHK Spring such that all of NMM's activities can be attributable to its parent corporation.

---

**3.** In his deposition testimony, Denzil Sheckler indicated that his boss, Al Blackwood, would have had to get approval from NHK Spring to form a contract with plaintiff. (Sheckler, pg. 29).

Plaintiff has presented evidence which suggests that NHK Spring has significant involvement in major decisions at NMM, and that it has populated the ranks of NMM managers and directors with former members of its own staff. However, as the Sixth Circuit Court of Appeals found in *Dean v. Motel 6*, mere "cross-pollination" in corporate staffing is not the network of simultaneous board memberships that could support a finding that the parent corporation actually runs the subsidiary. *Dean*, 134 F.3d at 1275. Thus, in order to find specific personal jurisdiction over NHK Spring, there must be some connection between its in-state activities and the present cause of action to satisfy the requirements of *Southern Machine*.

■ Construing all evidence in the light most favorable to plaintiff, plaintiff has not shown that this cause of action "arises out of" defendant NHK Spring's contacts with Michigan.[4] In *Sultran* this court found that a parent corporation had direct involvement in the form of funding and control over its subsidiaries activities in Michigan. *Sultran* 187 F.Supp.2d at 886. The *Southern Machine* requirements were satisfied in that case because the cause of action arose from the parent corporation's in-state activities. In this case, even though plaintiff adduced evidence that NMM entered into a series of contracts with plaintiff, there is no evidence that NHK Spring funded or directed activities in Michigan that gave rise to this case.

On the other hand, there is ample evidence of NHK Spring's activities in the state of Ohio. New Mather Metals is located in Toledo, Ohio, and that is the location of meetings between NHK Spring and NMM officials. The contract between NMM and plaintiff concerned use of plaintiff's trade secret in Ohio. According to plaintiff's complaint:

> The acts of Defendant New Mather Metals, Inc., in entering into and breaching the parties' agreement, and in obtaining the trade secret process from Plaintiff by misrepresentation and improper means, all occurred in the city of Toledo, Ohio.

Complaint, ¶ 17. Furthermore, the individuals who were allegedly operating under the direction of NHK Spring officials were located in Ohio.

The operative facts of this controversy are not related to NHK Spring's contacts with the state of Michigan. To the extent that NHK Spring was involved in the series of contracts between plaintiff and NMM, those contacts arise from NHK Spring's activities in the state of Ohio. As defendant states in its supplemental brief, assuming that NHK Spring exercises control over NMM, this would support a finding of jurisdiction in Ohio.

## VI.

Despite the lack of personal jurisdiction in Michigan over NHK Spring, this court finds that it is not in the best interest of justice to dismiss this action. This court concludes that a better course of action would be to transfer this cause of action to Ohio under 28 U.S.C. 1406(a), which states that a district court " shall dismiss, or if it be in the best interest of justice, transfer such case to any district or division in which it could have been brought." The Sixth Circuit has found that § 1406 provides a basis for transfer:

> made for the purpose of avoiding an obstacle to adjudication on the merits in the district court where the action was

---

4. Plaintiff also claims that defendant NHK Spring's ownership of other subsidiaries in the state of Michigan supports personal jurisdiction. (Supp.Br., pg. 15). Though this may support the conclusion that NHK reached out to conduct business in Michigan, this does not show that this cause of action "arises out of" defendant's contacts with Michigan.

originally brought. That defect may be either improper venue or lack of personal jurisdiction.

*Coleman v. Chen*, 712 F.Supp. 117, 123 (S.D.Ohio 1988) *quoting Martin v. Stokes*, 623 F.2d 469, 474 (6th Cir.1980). Because plaintiff's claims against NHK Spring are "intimately connected" to its claims against NMM, this court will make a *sua sponte* transfer of plaintiff's claims against defendants NHK Spring and NMM to the U.S. District Court for the Northern District of Ohio. *Coleman*, 712 F.Supp. at 123.

### Conclusion

For the forgoing reasons, I find that this court lacks personal jurisdiction over NHK Spring. Considering all pleadings in the light most favorable to the plaintiff, this cause of action arose from defendant's activities in the state of Ohio. Therefore, transfer of this case in its entirety, rather than dismissal is the appropriate remedy.

**IT IS SO ORDERED.**