NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0273n.06

Case No. 09-1306

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**May 04, 2010**

LEONARD GREEN, Clerk

CITIZENS BANK,                    )
                                  )
   Plaintiff-Appellee,          )
                                  )      ON APPEAL FROM THE
      v.                       )      UNITED STATES DISTRICT
                                  )      COURT FOR THE EASTERN
HOWARD L. PARNES,          )      DISTRICT OF MICHIGAN
                                  )
   Defendant-Appellant.      )
                                  )
                                  )

_____  )

BEFORE:  BATCHELDER, Chief Judge, SUTTON, Circuit Judge; and WISEMAN[*], Senior District Judge.

      **ALICE M. BATCHELDER, Chief Judge.**  Howard Parnes appeals the denial of his motion to vacate a clerk's entry of default judgment in favor of plaintiff, Citizens Bank, claiming that the court lacked personal jurisdiction over him and that the default judgment should have been vacated because he could demonstrate a meritorious defense.  Because we find no merit to either of these contentions, we AFFIRM.

**I.**

      The plaintiff, Citizens Bank, initiated this action on November 4, 2008, to enforce a guaranty given by defendant, Howard L. Parnes ("Parnes"), a resident of New York, to Citizens Bank's predecessor-in-interest, Republic Bank.  The guaranty was security for a $4.7 million loan made by

_____

[*]The Honorable Thomas A. Wiseman, Jr., Senior District Judge for the Middle District of Tennessee, sitting by designation.

Republic Bank to Coolidge-Cedar Park Equities, LLC[1] to purchase a shopping center in Holt, Michigan.

On January 31, 2002, Parnes signed a term loan note in favor of Republic Bank, in his capacity as President of Coolidge-Cedar Park Corp.,[2] the managing member of the borrower. The note specifically stated that it was executed in Michigan and governed by Michigan law.

As security for the loan, Coolidge-Cedar Park Equities, LLC ("Coolidge-Cedar Park") gave Republic Bank a future advance mortgage on the shopping center, and Parnes signed the mortgage on Coolidge-Cedar Park's behalf. As additional security for repayment of the loan, Parnes–in his individual capacity–executed a Continuing Limited Guaranty that guaranteed the repayment of 50% of the loan's outstanding balance upon written demand following any default by Coolidge-Cedar Park. The guaranty also stated that it was executed in Michigan and governed by Michigan law.

The parties amended the note several times, extending the original term; each amendment was signed by Parnes on behalf of Coolidge-Cedar Park and on behalf of himself as the guarantor. The final amendment extended the maturity date to July 31, 2007.

On October 22, 2007, Citizens Bank gave Parnes written notice of the loan's maturity, Coolidge-Cedar Park's default and the balance due and owing, and demanded payment on the guaranty. After receiving the notice, Parnes contacted Citizens Bank, requesting that it forbear from any collection action, and on December 19, 2007, the parties entered into a forbearance agreement. As with the previous agreements, Parnes signed the forbearance agreement on behalf of Coolidge-

---

[1]The borrower is a Delaware LLC.

[2]The managing member of the borrower is a Michigan corporation.

Cedar Park and on behalf of himself as guarantor, and the agreement specified that Michigan law governed.

The forbearance agreement "acknowledge[d] that the Indebtedness is valid, presently due and owing in full and fully enforceable subject to no defenses, set offs, claims or counter claims of any kind or in any amount" as between Citizens Bank and Coolidge-Cedar Park. It also "acknowledge[d] that the Guaranty is valid and fully enforceable and is hereby reaffirmed and restated, as if fully set forth herein, subject to no defenses, set offs, claims or counter claims of any kind or in any amount." Citizens Bank agreed to a forbearance period lasting until September 30, 2008, "at which time, and without further notice, the Bank shall be entitled to exercise any and all of its rights and remedies to enforce and collect the Indebtedness."

On August 11, 2008, and August 29, 2008, Citizens Bank's counsel reminded Parnes' counsel of the September 30, 2008, expiration of the forbearance period and asked whether the bank could expect payment, but received no response. Citizens Bank's counsel sent a last reminder e-mail on October 3, 2008, but again received no response.

On November 4, 2008, Citizens Bank filed its complaint in the district court to enforce the guaranty. The same day, counsel for Citizens Bank called Parnes' counsel to see if Parnes would waive service of process pursuant to Rule 4(d) of the Federal Rules of Civil Procedure ("FRCP"). Had Parnes agreed, he would have had sixty days from the mailing of the waiver request to defend. FRCP 4(d)(3). But Parnes did not respond, and the bank served the Summons and Complaint on Parnes at his White Plains, New York, residence on November 12, 2008. Pursuant to FRCP 12(a)(1)(A)(i) (2007) (amended 2009), his response was due by December 2, 2008.

3

At the time of service, however, Parnes was in a rehabilitation facility due to a recent medical condition. The pleadings, therefore, had to be forwarded to Parnes' daughter and then to his attorneys, reducing their time for responding to the complaint. Parnes' New York counsel called Citizens Bank's counsel on November 26, 2008, to request an extension of time to file an answer, and the Bank's counsel agreed to take no action in the matter until December 10, 2008. Michigan-based counsel — who were considering representing Parnes as local counsel — then requested more time, and Citizens Bank agreed to an additional extension to December 12, 2008.

Apparently believing that he needed more time to file his answer, Parnes' New York attorney, Matthew Hearle, who had not yet made any appearance as counsel in the case, called the district court to ask whether a formal motion to extend the time to answer would be required or whether an informal application, such as a letter, would suffice. Hearle spoke, ex parte, with Judge Battani's Case Manager, Bernadette Thebolt[3], who advised Hearle that since he was requesting only two weeks, no motion would be necessary, that she would not need to consult with the district judge, and that Parnes could have the two-week extension. She further directed Hearle to write a confirming letter that specified an exact date by which time the response would be served. Hearle wrote such a letter, confirming an extension to December 24, 2008, and electronically filed it on the district court's docket on December 11, 2008. Citizens Bank's counsel received the letter through the electronic case filing system on December 12, 2008, and immediately sent a letter to Thebolt objecting to the supposed extension and complaining of the impropriety of the ex parte communication.

---

[3]Citizens Bank refers to Thebolt as the "Court's Courtroom Deputy." It is unclear to the court what Ms. Thebolt's title really was.

4

The district court did not respond to either letter, nor did it enter any order extending any deadline, and no attorney filed a motion or an appearance on Parnes' behalf. On December 19, 2009, pursuant to Rule 55(a), Citizens Bank filed a properly supported request for entry of default against Parnes for failure to defend. The Clerk entered the default the same day. Then on December 24, 2008, Citizens Bank filed a request for a Rule 55(b)(1) clerk's entry of judgment by default.

Parnes' counsel attempted to "serve" Citizens Bank's counsel with a Rule 12(b) motion to dismiss (for lack of personal jurisdiction, *forum non conveniens*, or alternatively, to transfer venue to the Southern District of New York) on December 24, 2008, via e-mail, apparently after Citizens Bank counsel's office had closed for Christmas Eve. The motion was not electronically filed with the district court because Parnes' "soon-to-be-retained local counsel in Michigan" was already on vacation for Christmas as well. The "meet and confer" conference between the parties' counsel took place on December 29, 2008; at that conference, Citizens Bank's counsel acknowledged that he had received the motion but that he would not consent to the relief sought. Allegedly, he did not specifically object to the motion's untimeliness or mention that he had submitted an application for entry of default. Parnes' counsel then sent a copy of the motion papers to the district judge's chambers and to plaintiff's counsel, but on December 31, 2008, the district court's Calendar Clerk informed Parnes' counsel that the motion could not be accepted because the Clerk of Court had entered a Clerk's Entry of Judgment by Default on December 30, 2008.

Parnes filed a motion to vacate the default judgment on January 14, 2009. On February 23, 2009, the district court held a hearing on Parnes' motion. Though the court was clearly not happy with the way events had transpired, it found that Parnes did not willfully default and that any delay or prejudice could be taken care of through imposition of costs. The court, however, denied Parnes'

5

motion to vacate the default judgment because it found that Parnes had no meritorious defense. It did not specifically address Parnes' arguments concerning lack of jurisdiction. The district court memorialized its denial of the motion in an order on February 23, 2009. It is from this order that Parnes now appeals.

On appeal, Parnes reasserts his arguments that the district court lacked personal jurisdiction over him and that the district court erred in finding that he lacked a meritorious defense. In addition, he asserts that the default judgment is void because Citizens Bank did not provide him with the required three days notice under Rule 55(b)(2). We address each of those arguments in turn.

**II.**

Personal jurisdiction over a defendant is a threshold issue that must be present to support any subsequent order of the district court, including entry of the default judgment. *See Kroger Co. v. Malease Foods Corp.*, 437 F.3d 506, 510 (6th Cir. 2006). Subject matter jurisdiction in this case is based upon diversity. To determine whether personal jurisdiction exists over an out-of-state defendant, the court must find: (1) whether the forum state's long-arm statute authorizes jurisdiction; and (2) if so, whether exercising that jurisdiction comports with constitutional due process. *Air Products & Controls, Inc. v. Safetech Int'l, Inc.,* 503 F.3d 544, 550 (6th Cir. 2007).

**A. Michigan's Long-Arm Statute**

Michigan's long-arm statute extends limited personal jurisdiction over a non-resident if the claim "aris[es] out of an act which creates [certain] relationships," including "[t]he transaction of any business within the state." M.C.L. 600.705(1). The "arising from" requirement is met if the cause of action was "made possible" by or "lies in the wake of" the defendant's contacts with the forum state. *Lanier v. American Bd. of Endodontics,* 843 F.2d 901, 909 (6th Cir. 1988) (analyzing

6

identically worded provision governing corporate jurisdiction). The Michigan Supreme Court has interpreted the word "any" in the phrase "transaction of any business" as "mean[ing] just what it says. It includes 'each' and 'every'." *Sifers v. Horen*, 188 N.W.2d 623, 624 n.2 (Mich. 1971). We have held that "if defendant conducted even the slightest act of business in Michigan, the first statutory criterion for personal jurisdiction . . . is satisfied." *Lanier*, 843 F.2d. at 906. The statute, therefore, expands personal jurisdiction of Michigan courts to the "full potential." *Chicago Blower Corp. v. Air Systems Associates, Inc.,*, 623 F. Supp. 798, 800 (E.D. Mich. 1985) (quoting *Sifers*, 188 N.W.2d at 623). Moreover, the Michigan Court of Appeals has held that M.C.L. 600.705(1) "is intended to be liberally construed in favor of recognizing limited personal jurisdiction especially where an ordinary commercial transaction is involved, absent violation of due process of law." *Lazzaro v. Charlevoix Lakes,* 310 N.W.2d 295, 297 (Mich. App. 1981) (affirming personal jurisdiction over nonresident guarantors of a loan agreement, out of which arose action for its breach).

In his brief, Parnes maintains an unconvincing argument that he has not transacted any business in Michigan. He erroneously relies on two cases: *Chicago Blower Corp. v. Air Systems Associates, Inc.*, 623 F. Supp. 798 (E.D. Mich. 1985) and *Anderson v. FDIC*, No. 96-70411,1996 U.S. Dist. LEXIS 19907 (E.D. Mich. 1996). Both are inapposite. In fact, the court in *Chicago Blower Corp.* did not even analyze whether the defendants came under Michigan's long-arm statute; instead, it went straight to the constitutional due process analysis because Michigan's statute is so expansive. *Anderson* addressed jurisdiction under a separate part of the statute — M.C.L. 600.705(2) — Michigan's tort jurisdiction provision.

The fact is that Parnes personally guaranteed the loan originally made by Republic Bank, and also signed the loan note in his capacity as President of the borrower's (Coolidge-Cedar Park Equities, LLC) managing member, Coolidge-Cedar Park, Corp., a Michigan corporation. The loan specifically stated that it was executed in Michigan and governed by Michigan law. Parnes knew that in the event of default, the bank would require him personally to make payments up to 50% of the outstanding balance. And after the borrower's default, Parnes asked Citizens Bank to forbear from exercising its rights under the original documents; he then negotiated the forbearance agreement with the bank. These acts constitute the transaction of business in Michigan, particularly under the *Sifers* court's expansive interpretation of M.C.L. 600.705(1).

**B. Constitutional Due Process**

Constitutional due process requires that the plaintiff establish that defendant has minimum contacts with Michigan, that is, sufficient contact with the state so that the maintenance of the action does not offend "'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Minimum contacts exist where a "defendant's conduct and connection with the forum state are such "that he would reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

The Sixth Circuit has established a three-part test for determining whether long-arm jurisdiction over an out-of-state defendant comports with due process:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection

8

with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

The "purposeful availment" requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Burger King Corp v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal quotations and citations omitted). "Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant *himself* that create a substantial connection with the forum State." *Id.* (quoting *McGee v. Int'l Life Insurance Co.*, 355 U.S. 220, 223 (1957)) (emphasis in original).

The "arises from" prong merely means that the plaintiff's cause of action must be "made possible" by or be "connected with" the defendant's contacts with the forum state. *Air Products,* 503 F.3d at 553. This is a "lenient standard." *Id.* The "reasonableness" prong is also lenient, because when the first two prongs are met, "an inference of reasonableness arises." *Id.* at 554.

With respect to a forum's personal jurisdiction over nonresident guarantors, the Sixth Circuit has already spoken with precision in *National Can Corp. v. K Beverage Co.*, 674 F.2d 1134 (6th Cir. 1982). In *National Can*, the court found that a nonresident who had never set foot in the forum state of Kentucky and whose only relationship with the forum was that she was married to a shareholder of the company at issue and had signed a guaranty agreement that facilitated a Kentucky business venture, was subject to the personal jurisdiction of the forum state. *Id.* at 1137. The *National Can* court easily found all three *Southern Mach. Co.* criteria were met. Addressing the "purposeful availment" prong, it noted that:

> First, the defendants voluntarily signed the guaranties, without which credit would not have been furnished. The guaranty agreements showed clearly that the business the guarantors were assisting in creating was to be located in Kentucky. . . . The guarantors . . . through marital rights had an economic interest in KBC. Signing a personal guaranty for a Kentucky business in which one has an economic interest is the sort of "conduct and connection with the form [sic] State" that makes it reasonable to "anticipate being haled into court there" when the underlying contract is breached.

*Id.* at 1138. With respect to the "arises from" prong, the court stated that "[t]he second aspect of the test obviously is satisfied. The guaranty agreements are the basis for the action." *Id.* Turning to the "reasonableness" prong, the court noted that the guarantors freely chose to locate the venture in Kentucky and voluntarily signed the guaranty agreement.

The court's analysis in *National Can* is equally applicable to Parnes. First, he voluntarily signed the personal guaranty, which facilitated the loan, allowing the purchase of the Michigan shopping center by an entity in which he had an economic interest. He also sought a forbearance agreement from the bank upon the original default. Second, the guaranty agreement is the basis for this action. And finally, he personally sought after and voluntarily: (1) chose Michigan as the location for his business venture, and (2) signed the guaranty agreement. The district court properly exerted personal jurisdiction over Parnes.

## III.

Because the district court did, indeed, have personal jurisdiction over Parnes, we now turn to his arguments regarding the propriety of the district court's denial of his motion to set aside the default judgment.

Unlike a default, which needs only good cause to be set aside under Fed. R. Civ. P. 55(c), a default that has become final as a judgment can be set aside only under the stricter standards for

10

setting aside final and appealable orders under Fed. R. Civ. P. 60(b). *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 595 (6th Cir. 2006). The denial of a motion to vacate a default judgment, therefore, is reviewed for abuse of discretion. *Burrell v. Henderson,* 434 F.3d 826, 831 (6th Cir. 2006).

Upon review of a motion to vacate a default judgment, the district court should consider (1) whether the proponent's culpable conduct led to the default, (2) whether the proponent has a meritorious claim or defense, and (3) whether the opposing party would be prejudiced. *Weiss v. St. Paul Fire & Marine Ins. Co.*, 283 F.3d 790, 794 (6th Cir. 2002); *United Coin Meter Co., Inc. v. Seaboard Coastline Railroad*, 705 F.2d 839, 845 (6th Cir. 1983). The culpable conduct prong should be examined first, and when relief is sought under Fed. R. Civ. P. 60(b)(1), as it was here[4], the proponent must demonstrate that its default was the product of mistake, inadvertence, surprise, or excusable neglect. *Manufacturers' Indus. Relations Ass'n v. East Akron Casting Co.*, 58 F.3d 204, 209-10 (6th Cir. 1995) (quoting *Waifersong, Ltd. v. Classic Music Vending*, 976 F.2d 290, 292 (6th Cir. 1992)). Only if the proponent satisfies this prong should the remaining two factors be examined; otherwise the motion to set aside the default judgment should be denied. *Id.*

At the district court level, the court determined that the first and third *United Coin* factors had been met, finding that "the action of prejudice and the delay for the month could be taken care of in costs" and that "the default is not willful. I think the letters and the calls between the parties and with the Court indicate that defendant was trying to do something."

---

[4]Parnes' motion to vacate actually cites to Fed. R. Civ. P. 55(c), which allows the court to set aside an entry of *default* for "good cause." However, he did not move the court to do anything until after the default *judgment* had been entered. To set aside a default that has become final as a *judgment*, Rule 55(c) provides that the court "may set aside a default judgment under Rule 60(b)."

11

Parnes' counsel's decision to contact a courthouse official, ex parte, and attempt to informally extend a deadline that is set by the Federal Rules is certainly questionable, at best, if not "culpable." The Rules provide that the way to request time extensions is by motion. Citizens Bank points to a Second Circuit case which is instructive in this regard: "Litigants should not seek legal advice from judges or judicial staff, and in any case, attorneys should know better than to rely on such advice. Moreover, ad hoc inquiries regarding purported advice are difficult to conduct, lead to uncertain results and meddle in the internal workings of judges' chambers." *In re Am. Safety Indem. Co.*, 502 F.3d 70, 73 (2d Cir. 2007).

Nevertheless, the district court gave Parnes the benefit of the doubt with respect to the culpable-conduct prong and denied his motion based on the lack of a meritorious defense. We do not find that it abused its discretion in that regard.

In analyzing whether a defendant has a meritorious defense, "likelihood of success is not the measure. Rather, if any defense relied upon states a defense good at law, then a meritorious defense has been advanced." *United Coin Meter Co., Inc.,* 705 F.2d at 845 (citations omitted). "A defense is sufficient if it contains even a hint of a suggestion which, proven at trial, would constitute a complete defense. The key consideration is to determine whether there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default." *Smith v. C.I.R.*, 926 F.2d 1470, 1480 (6th Cir. 1991) (quoting *INVST Financial Group, Inc. v. Chem-Nuclear Sys., Inc.*, 815 F.2d 391, 399 (6th Cir. 1987)). In his brief, Parnes contends that he advanced two meritorious defenses. First, he argues that the bank has not satisfied one of the prerequisites to guarantor liability: written notice. The district court found that the October 2007 letter to Parnes satisfied the notice requirement, but Parnes disagrees, though he offers little explanation as to why.

12

Second, he argues that, after the forbearance period expired, the bank wrongfully served a demand for rent on the tenants of the shopping center, and by doing so, disrupted the rental income to Coolidge-Cedar Park, which impaired its ability to properly maintain the property, and in turn devalued the property — which he calls collateral that secures the loan.

The district court was correct to call Parnes' no-notice argument "bogus." Despite Parnes' allegation that the complaint did not include an assertion that the bank provided notice, paragraph 15 of the complaint, in actuality, plainly states that "Notice of the Bank's intention [to enforce the Guaranty and foreclose] was given both to Cedar Park and the Guarantor on October 22, 2007." The written notice of October 2007 plainly advised Parnes of the default and the demand of payment on the guaranty: "PLEASE TAKE FURTHER NOTICE that you have personally guaranteed amounts owed to Citizens Bank by Coolidge-Cedar park Equities, L.L.C., pursuant to a Guaranty . . . and DEMAND IS HEREBY MADE for immediate payment of amounts due to the Bank under your guaranty." Finally, the forbearance agreement specifically waived any requirement of further notice beyond what Parnes had already received: "the Bank agrees until September 30, 2008 (the "Forbearance Period") (at which time, and without further notice, the Bank shall be entitled to exercise any and all of its rights and remedies to enforce and collect the Indebtedness) . . . [that it] will refrain from exercising its rights and remedies pursuant to the law in such case made and provided." This defense is not "good at law," as Parnes asserts, because (1) notice was, in fact, given, and (2) even if it had not been given, the forbearance agreement waived any further notice.

Parnes' "impairment of collateral" defense is spurious, as well. The mortgage authorized the bank to demand rent from the tenants of the shopping center in the event of default. In any event, Parnes waived this defense in the Guaranty:

13

> The obligations of the Guarantor hereunder are not released, discharged or in any way affected by reason of the fact that . . . the value of any of the collateral . . . may have changed or may hereafter change . . . nor by any other circumstances which might otherwise constitute a legal or equitable discharge of a surety or guarantor.

Moreover, the statute which Parnes cites for this argument, M.C.L. 440.3605, provides that "A party is not discharged under this section if . . . the instrument or a separate agreement of the party provides for waiver of discharge under this section either specifically or by general language indicating that parties waive defenses based on suretyship or impairment of collateral." M.C.L. 440.3605(9)(ii).

Parnes nevertheless contends that the mere fact that the district court "delved into the underlying merits of [his] presented defenses," proves that his defenses are "good at law." He even goes so far as to say that the district court had no business looking at the underlying merits of his defenses. However, the district court is not obliged merely to accept Parnes' general assertion of these two defenses without even a "hint of a suggestion" of supporting evidence. *See Smith*, 926 F.2d at 1480.

Accordingly, the district court did not abuse its discretion in denying Parnes' motion to set aside the default judgment.

Parnes also argues that his jurisdictional argument constituted a "meritorious defense." Because we have already analyzed Parnes' jurisdictional argument and found it lacking merit, Parnes could not have won his 60(b) motion on that ground.

**IV.**

In his reply brief, Parnes raises, for the first time, the argument that the default judgment is actually void (thus, we should vacate it) because he was entitled to three days' advance notice of the

14

application for default judgment, pursuant to Rule 55(b)(2) (2007) (amended 2009). The Clerk of Court entered the default judgment, pursuant to Rule 55(b)(1), on December 30, 2008, and did so without provision of any notice to Parnes. Parnes argues that this was improper, because when a party has made an appearance, the party is entitled to three days' notice under Rule 55(b)(2). Only when a party has failed to appear does Rule 55(b)(1) govern, and Parnes asserts that his appearance was evident from the correspondence between his attorneys and those of Citizens Bank. Because he appeared, Parnes argues, he was entitled to three days' notice of the bank's application for default judgment, and the lack thereof renders the default judgment void.

While this is perhaps Parnes' most compelling argument, he should have raised it much sooner than in his reply brief before this Court. He failed to present this argument to the district court and did not develop it in his opening brief here. As a result, this particular issue is not properly before us. *See United States v. Perkins*, 994 F.2d 1184, 1191 (6th Cir. 1993) (citing *Pachla v. Saunders Systems, Inc.*, 899 F.2d 496, 502) ("Issues raised for the first time in a reply brief are not properly before this court."); *Farm Labor Org. Comm. v. Ohio State Highway Patrol*, 308 F.3d 523, 537 n.6 (6th Cir. 2002). In any event, the law does not compel the result Parnes seeks.

To begin our inquiry, it is appropriate to turn to the text of Rule 55(b):

**(b) Entering a Default Judgment**
**(1) *By the Clerk.*** If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk—on the plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.
**(2) *By the Court.*** In all other cases, the party must apply to the court for a default judgment. . . . If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 3 days before the hearing.

15

Fed. R. Civ. P. 55(b) (2007) (amended 2009). Thus, the Rules provide for two methods of entering a default judgment: (1) by the clerk of court, with no notice requirement, in the event that the party has failed to appear, or (2) by the court, if the party has entered an appearance, with a requirement of 3 days' notice.[5] Accordingly, our first inquiry should be whether Parnes indeed made an appearance sufficient to trigger the three days' notice requirement.

The circuit courts are divided as to whether a formal appearance is necessary to trigger the Rule 55(b)(2) notice requirement. *Compare Rogers v. Hartford Life & Acc. Ins. Co.*, 167 F.3d 933, 936-37 (5th Cir. 1999), *Key Bank of Maine v. Tablecloth Textile*, 74 F.3d 349, 353 (1st Cir. 1996), *In re Roxford Foods, Inc.*, 12 F.3d 875, 881 (9th Cir. 1993), and H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970), *with Zuelzke Tool & Engineering Co., Inc. v. Anderson Die Castings, Inc.*, 925 F.2d 226, 230 (7th Cir. 1991). We have found that informal appearances suffice to trigger the three days' notice requirement, particularly if the informal contacts between the parties "indicate the defaulting party intends to defend the suit." *Lutomski v. Panther Valley Coin Exch.*, 653 F.2d 270, 271 (6th Cir. 1981) (per curiam) (quoting 6 Moore's Federal Practice 55.05(3)). In this case, though Parnes' counsel did not enter a formal appearance, he did advise the district court of an intention to respond to the complaint (albeit in a quite unorthodox manner) and requested time extensions from both plaintiff's counsel and the court. This indicates an intention to defend the suit and would entitle Parnes to Rule 55(b)(2) notice. *See Lutomski*, 653 F.2d at 271 (finding that informal conversations between the parties, wherein plaintiffs requested extensions to file, were sufficient to demonstrate intent to defend).

---

[5]There is no notice requirement for the clerk's initial entry of default under Rule 55(a), so long as the failure to defend is demonstrated by "affidavit or otherwise." Counsel for Citizens Bank submitted an affidavit to satisfy this requirement.

16

However, the inquiry does not stop here, because once again, the circuits are split as to whether the failure to provide notice as required by Rule 55(b)(2) renders the default judgment void, under Rule 60(b)(4), or just voidable, under Rule 60(b)(6). *Compare Planet Corp. v. Sullivan*, 702 F.2d 123, 126 n. 2 (7th Cir. 1983), *and Winfield Assocs. v. Stonecipher*, 429 F.2d 1087, 1091 (10th Cir. 1970), *with In re Roxford Foods, Inc.*, 12 F.3d 875, 881-82 (9th Cir. 1993) *and Savoretti v. Rodriguez-Jiminez*, 252 F.2d 290, 290 (5th Cir. 1958) (per curiam). Our circuit has noted that lack of Rule 55(b)(2) notice does not necessarily render the default judgment void, under Rule 60(b)(4). Instead, it is merely voidable, under Rule 60(b)(6). *See Lutomski*, 653 F.2d at 271 ("a failure to provide notice does not in itself render a judgment void, [but] it is a serious procedural irregularity.") (internal quotations omitted).

Given that this "procedural irregularity" has not voided the default judgment, we see no reason to vacate it. "A district court should grant relief from operation of a judgment under Rule 60(b)(6) when it determines in its sound discretion that substantial justice would be served." *Cincinnati Ins. Co. v. Byers*, 151 F.3d 574, 578 (6th Cir. 1998) (citing *Overbee v. Van Waters & Rogers*, 765 F.2d 578, 580 (6th Cir. 1985)). No substantial justice would be served by doing so here. Unlike in *Lutomski*, where we vacated the default judgment because the defendants had presented "strong arguments" that the damages as calculated by the default judgment were inaccurate, 653 F.2d at 271, Parnes has argued no such thing. Nor has he demonstrated that the final result would be any different should we vacate and remand to the district court, as he has utterly failed to present a meritorious defense.

**V.**

17

Accordingly, we **AFFIRM** the district court's denial of the motion to vacate the default judgment.