*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 12a0051p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

DAVID M. SCHNEIDER,

        *Plaintiff-Appellant,*

    *v.*

MICHAEL HARDESTY et al.,

        *Defendants,*

THOMAS NELSON,

        *Defendant-Appellee.*

No. 09-3892

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 06-00836—Susan J. Dlott, Chief District Judge.

Argued: October 12, 2011

Decided and Filed: February 23, 2012

Before: MOORE and ROGERS, Circuit Judges; HOOD, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Brian S. Sullivan, DINSMORE & SHOHL, Cincinnati, Ohio, for Appellant. Michelle Sheehan, REMINGER, Cleveland, Ohio, for Appellee. **ON BRIEF:** Brian S. Sullivan, Seth A. Schwartz, DINSMORE & SHOHL, Cincinnati, Ohio, for Appellant. Thomas E. Nelson, Salt Lake City, Utah, pro se.

_____

[*]The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

_____

**OPINION**

_____

KAREN NELSON MOORE, Circuit Judge.   Plaintiff David M. Schneider ("Schneider") appeals the district court's dismissal of his claims against defendant Thomas Nelson ("Nelson") for lack of personal jurisdiction.  Schneider argues that the district court improperly applied the preponderance-of-the-evidence standard, as opposed to the prima facie standard, in determining whether Schneider pleaded facts sufficient to establish personal jurisdiction over Nelson.  Schneider further argues that the district court erred in finding there is no personal jurisdiction over Nelson in Ohio. We conclude that the district court improperly granted the motion to dismiss.  Because the exercise of jurisdiction comports with due process and is proper under Ohio's long-arm statute even under the more demanding preponderance-of-the-evidence standard, we **REVERSE** the district court's judgment and **REMAND** for further proceedings consistent with this opinion.

**I.  BACKGROUND**

In 2001, Michael Hardesty ("Hardesty"), a resident of Utah, solicited Schneider, a resident of Ohio, to participate in an investment program.  Pursuant to the program, Schneider, a medical physician practicing in Ohio, purchased medical-malpractice insurance from Hardesty's foreign-based company, Provincial Insurance.[1]  A portion of the funds from Schneider's premiums were to be pooled with other premiums, invested with London Reinsurance to create a captive insurance company, and then reinvested with Vavasseur Corporation.  The investment program was to provide Schneider with federal-tax benefits and make him a partial owner of London Reinsurance in proportion to the amount of his investment.

---

[1] Provincial Insurance is a British Virgin Islands company licensed to conduct business in the United States.  R. 30 (Ex. C, Letter dated Sept. 29, 2003 at 1).

In December 2001, Schneider mailed a $550,000 insurance-premium payment to Provincial Insurance. Provincial Insurance pooled Schneider's premium with other premiums and transferred the funds to London Reinsurance. London Reinsurance then placed the funds in the Bank of Butterfield in Europe. When London Reinsurance attempted to transfer the funds to Vavasseur, it learned that the Bank of Butterfield had frozen the assets because of SEC proceedings against Vavasseur. Unbeknownst to Schneider, Vavasseur was in fact a Ponzi scheme that had received investments in excess of one-hundred million dollars.[2]

In 2003, Hardesty hired Nelson, an attorney licensed to practice in Utah, to assist with the recovery of London Reinsurance's assets from the Bank of Butterfield. By virtue of this employment, Nelson became the "authorized agent . . . [t]o sign on behalf of London Reinsurance." R. 7 (Ex. A, Nelson SEC Dep. at 81:18-22).

In September 2003, at Hardesty's request, Nelson drafted a letter addressed "To Whom It May Concern" directed at the doctors and medical practices whose premiums were invested in London Reinsurance. R. 30 (Ex. C, Letter dated Sept. 29, 2003). The letter introduced Nelson as an attorney "retained by Mike Hardesty . . . to assist in recovering the funds that were invested with and managed by Terry Dowdell," *id.* at 1, and was drafted with Nelson's signature block, R. 30 (Ex. B, Nelson Dep. at 22:24-23:14). In the letter, Nelson summarized efforts to recover London Reinsurance's assets and stated that "the name, address, and contact information for each insured or medical practice" had been provided to the Bank of Butterfield in aid of return of the funds. R. 30 (Ex. C, Letter dated Sept. 29, 2003 at 2). Nelson acknowledged that Hardesty was under investigation by the SEC, but attested to Hardesty's "integrity and honesty." *Id.* at 3. The letter concluded by stating that "every effort is being made to obtain a 100% return of your funds." *Id.* Nelson gave the letter to Hardesty, but did not participate in mailing it to any of the investors.

---

[2]Vavasseur's manager, Terry Dowdell, pleaded guilty to federal charges related to the scheme.

In December 2003, at Hardesty's request, Nelson drafted a second "To Whom It May Concern" letter with Nelson's signature block.  R. 30 (Ex. D, Letter dated Dec. 5, 2003).  In that letter, Nelson requested that the investors provide Hardesty with a copy of their current medical license, confirmation or documentation of membership in any medical associations, a copy of their current passport or drivers license, and a current e-mail address, home address, and telephone number.  Nelson concluded by stating "we are totally focused in our efforts to obtain a 100% return of all funds" and "foreign counsel has already been authorized to move forward with legal proceedings against the bank should negotiations fail to deliver the desired results." *Id.*  Nelson gave the letter to Hardesty, but did not participate in mailing it to any of the investors.  Schneider maintains that he responded to Nelson's second letter by sending the information requested.[3]   Nelson testified that because investors were instructed to send the information to Hardesty, Nelson "did not review the contents of" the "package" that contained the information sent by investors.  R. 30 (Ex. B, Nelson Dep. at 38:18-39:9).

On December 8, 2006, Schneider filed a lawsuit against multiple defendants, including Hardesty and Nelson, alleging fraud and misrepresentation, among other claims.  Schneider alleged that the two letters written by Nelson contained false and misleading statements by which Nelson furthered the scheme to defraud Schneider.  Schneider contended that Nelson's actions induced reliance thereby harming Schneider.

Nelson moved to dismiss Schneider's complaint for lack of personal jurisdiction.  In response to Nelson's motion, Schneider requested leave to conduct limited discovery on the issue of jurisdiction.[4]   The district court granted Schneider's request and permitted Schneider to depose Nelson.  During the deposition, Nelson stated that Hardesty had told him the names of some of the investors, but that he could not "recall" whether the names he was provided constituted "a complete list or not."  R. 30 (Ex. B, Nelson Dep. at 29:6-10).  Nelson also stated that when he provided the letters to

---

[3]Nelson argues that Schneider has not presented any evidence indicating that he did indeed send this information to Hardesty.

[4]Neither Schneider nor Nelson requested that the district court hold an evidentiary hearing.

Hardesty, he was "[c]ertainly" aware that Hardesty might distribute them to investors. *Id.* at 35:20-24.

After the parties submitted additional briefing, the magistrate judge issued his report and recommendation. In finding personal jurisdiction lacking, the magistrate judge stated:

> [w]hat's missing . . . is any indication from plaintiff, who has not filed an affidavit or a verified complaint in this case, that he in [any way] relied upon the information or representations in either letter to either take action or refrain from taking action. There is no allegation that plaintiff understood the letters to mean that Nelson was his legal representative or that the letters otherwise had any effect on plaintiff's conduct. In other words, as far as the Court is aware at this time, the letters did not lead to any course of conduct between the parties. Without some modicum of proof that the letters caused or contributed to harm suffered by plaintiff, or that the plaintiff relied on the statements set forth in the letters, the Court is at a loss to understand how one can conclude that the letters created a connection with the forum state or caused a consequence in the forum state.

R. 28 (Report and Recommendation at 11). The district court adopted the report and recommendation in full, granted Nelson's motion to dismiss, and certified its order as final and appealable pursuant to Federal Rule of Civil Procedure 54(b). Schneider now appeals.

## II. ANALYSIS

### A. Standard of Review

"'We review *de novo* a district court's dismissal of a complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.'" *Gerber v. Riordan*, 649 F.3d 514, 517 (6th Cir. 2011) (quoting *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002)).

## B. Standard of Proof for Personal Jurisdiction

"The party seeking to assert personal jurisdiction bears the burden of demonstrating that such jurisdiction exists." *Bird*, 289 F.3d at 871.  In *Serras v. First Tennessee Bank National Association*, this Circuit explained that "[t]he weight of [the] burden . . . depends on whether the trial court chooses to rule on written submissions or to hear evidence on the personal-jurisdiction issue . . . ."  875 F.2d 1212, 1214 (6th Cir. 1989).  When the district court "rules on written submissions alone" the burden consists of "a *prima facie* showing that personal jurisdiction exists."  *Id.*  When a pretrial-evidentiary hearing is conducted, the preponderance-of-the-evidence standard applies.  *Id.*  We explained that this rule prevents a defendant from "defeat[ing] personal jurisdiction merely by filing a written affidavit contradicting jurisdictional facts alleged by a plaintiff" while simultaneously allowing a defendant to "invoke the court's discretion to order a pretrial evidentiary hearing" and thereafter apply the more-exacting standard when a plaintiff's jurisdictional allegations are wholly unfounded.  *Id.*

*Serras*, however, did not speak to the scenario presented in this case where some discovery was conducted, but an evidentiary hearing was not held.  Schneider argues that the district court improperly applied the preponderance-of-the-evidence standard, as opposed to the less-demanding prima facie standard, in the absence of an evidentiary hearing.  Nelson counters that the district court properly applied the preponderance-of-the-evidence standard because Schneider received all of the discovery that he requested and there were no outstanding factual issues in dispute.[5]  Nelson relies on *Dean v. Motel 6 Operating L.P.* in support of this argument.  134 F.3d 1269 (6th Cir. 1998).

In *Dean*, the jurisdictional dispute concerned the control exercised by a company, Accor, over a related corporate entity, Motel 6 Operating.  *Id.* at 1273.  The district court

---

[5]Nelson also argues that Schneider should be estopped from arguing for the application of the prima facie standard in light of representations made to the district court when requesting discovery.  This argument is without merit because Schneider's position is not clearly inconsistent with that previously taken before the district court.  *See Lorillard Tobacco Co. v. Chester, Willcox & Saxbe*, 546 F.3d 752, 757 (6th Cir. 2008).  In requesting leave to conduct limited discovery, Schneider pointed out that if the district court did not allow discovery, the prima facie standard would apply.  This statement is not inconsistent with the position that after limited discovery, but in the absence of an evidentiary hearing, the prima facie standard still applies.

allowed "extensive discovery" in aid of the jurisdictional issue, though not all of the discovery Dean requested, but did not hold an evidentiary hearing. *Id.* at 1272, 1274. On appeal, we held that the district court erred in applying the preponderance-of-the-evidence standard "because (although there was discovery) there was no evidentiary hearing on the jurisdiction question." *Id.* at 1272. The panel went on to state that "we would not use this standard if the reason for not having an evidentiary hearing was that there was no 'real dispute' as to the facts or to the extent of discovery." *Id.* (citing *Int'l Techs. Consultants, Inc. v. Euroglas S.A.*, 107 F.3d 386, 391 (6th Cir. 1997)). Nelson argues that this statement delineated an exception to the prima facie standard in the absence of an evidentiary hearing when no "real dispute" exists.[6]

Neither Nelson nor the magistrate judge identified a case applying this exception in the thirteen years since the decision in *Dean*, and, because the statement was not essential to the *Dean* holding, it is arguably dicta.[7] Assuming arguendo the exception does exist, the question arises as to whether *Dean*'s use of the conjunction "or" implies that the exception applies only when there is no "real dispute" both as to the scope of discovery and as to the relevant facts, or whether the absence of a dispute as to either element is individually sufficient. *International Technologies Consultants*, which *Dean* cites in support, suggests that both elements need to be satisfied before the exception applies. *International Technologies Consultants* recognized that the application of the prima facie standard "loses some of its significance" when there is neither a dispute as to the jurisdictional facts nor a dispute regarding the scope of discovery. 107 F.3d at

---

[6]Other courts have not read *Dean* as creating such an exception, but have instead interpreted it as confirming that the preponderance-of-the-evidence standard never applies in the absence of an evidentiary hearing. *See, e.g.*, *Bradford Co. v. Afco Mfg.*, 560 F. Supp. 2d 612, 618-19 (S.D. Ohio 2008) ("[T]he Sixth Circuit left no doubt in *Dean v. Motel 6 Operating L.P.* that the preponderance of evidence standard does not apply where no evidentiary hearing has been held.").

[7]In fact, in most instances, this Circuit has applied the prima facie standard in the absence of an evidentiary hearing without even considering the exception's possible application. *See, e.g.*, *Bridgeport Music, Inc. v. Still n the Water Publ'g*, 327 F.3d 472, 476-78 (6th Cir. 2003) (applying prima facie standard where there was limited discovery but no evidentiary hearing); *Smith v. Home Depot USA, Inc.*, 294 F. App'x 186, 188-89 (6th Cir. 2008) (unpublished) (same). The closest this Circuit has come to addressing the issue was in *Chrysler Corporation v. Uptown Motorcars-Hartford, Inc.*, No. 98-1097, 1999 WL 196558, (6th Cir. Apr. 1, 1999) (unpublished opinion). There a panel held the prima facie standard should apply in the absence of an evidentiary hearing where it was unclear whether all discovery desired was granted. *Id.* at *3.

391.  *International Technologies Consultants* read in conjunction with *Serras* would suggest that any exception created in *Dean* was aimed at those rare instances in which a plaintiff has been granted all discovery requested and that discovery resulted in an undisputed set of facts such that an evidentiary hearing would be pointless.

Counsel admitted at oral argument that Schneider received all discovery requested.  Nelson also argues that there are no outstanding factual disputes.  We disagree.  It is clear that the extent of Nelson's knowledge of the locations of the recipients of the "To Whom It May Concern" letters remains very much in dispute. Each party gleans different inferences from Nelson's deposition testimony, and neither party's factual conclusion is air tight.  Moreover, that Nelson's deposition resolved some of the outstanding factual issues, *i.e.*, whether an attorney-client relationship existed between Nelson and Schneider, is of no moment.[8]  Other facts pertinent to the jurisdictional inquiry, namely the exact extent of Nelson's knowledge of the locations of the investors, remain in dispute.

Ultimately, we need not decide conclusively whether the exception alluded to in *Dean* in fact exists or whether it should apply in this instance.  For the reasons that follow, Schneider has demonstrated personal jurisdiction over Nelson in Ohio even under the more exacting standard imposed by the district court—the preponderance-of-the-evidence standard.

## C.  Personal Jurisdiction

In a diversity case, a plaintiff must satisfy the state-law requirements for personal jurisdiction.  *Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 361 (6th Cir. 2008).  Thus, Schneider must demonstrate that both due process and Ohio's long-arm statute are satisfied.  *Id.*  "We have recognized that Ohio's long-arm statute is not coterminous with federal constitutional limits."  *Id.*

---

[8]In his SEC deposition, Nelson testified that he could not answer the question as to whether he was aware of the identities of the investors because of attorney-client privilege.  *See* R. 30 (Ex. B, Nelson Dep. at 26:6-9).  During Nelson's deposition in this case, Nelson clarified that he was referring to his attorney-client relationship with Hardesty and that he did not have an attorney-client relationship with Schneider.  *Id.* at 32:23-33:3.

Therefore, we begin by analyzing whether the requirements of Ohio's long-arm statute are met and then separately consider whether the exercise of jurisdiction would comport with due process. *Id.*

### 1. Ohio's Long-Arm Statute

Ohio's long-arm statute establishes a statutory basis for jurisdiction over foreign defendants. It states:

> (A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
>     (1) Transacting any business in this state;
>     (2) contracting to supply services or goods in this state;
>     . . .
>     (6) causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state . . . .

OHIO REV. CODE ANN. § 2307.382(A).

Schneider argues that jurisdiction is proper pursuant to Ohio's long-arm statute under two distinct theories. First, Schneider argues that Hardesty acted as Nelson's agent thereby both transacting business and contracting to supply services in Ohio under OHIO REV. CODE ANN. § 2307.382(A)(1) and 2307.382(A)(2). Second, Schneider argues that, by drafting the "To Whom It May Concern" letters and turning them over to Hardesty, Nelson caused reasonably expected tortious injury within the meaning of OHIO REV. CODE ANN. § 2307.382(A)(6). Because jurisdiction is proper under § 2307.382(A)(6), we decline to reach the merits of Schneider's agency argument.

Although this Circuit has not had much occasion to consider the contours of § 2307.382(A)(6), the district courts have given it considerable attention and generally "taken a broad approach" to its application. *Grigor v. Starmark Hospitality Group LLC*, No. 2:10-cv-20, 2010 WL 2403137, at *5 (S.D. Ohio June 10, 2010) (quoting *Shaker Constr. Group, LLC v. Schilling*, No. 1:08cv278, 2008 WL 4346777, at *4 (S.D. Ohio Sept. 18, 2008)). Of particular note, district courts have found that fraudulent

communications or misrepresentations directed at Ohio residents satisfy § 2307.382(A)(6)'s requirements.  *See, e.g.*, *id.***[9]**

*Vlach v. Yaple* from the Northern District of Ohio is particularly instructive and persuasive.  In *Vlach*, the plaintiff alleged that she received three communications from the defendant—one letter and two emails—in violation of various federal-consumer-protection statutes.  670 F. Supp. 2d 644, 646, 648 (N.D. Ohio 2009).  The defendant argued that, although the communications contained his signature block, "he did not compose, review, or authorize" the communications and submitted an affidavit in support of that fact.  *Id.* at 646.  The district court, applying the prima facie standard in light of limited discovery and no evidentiary hearing, concluded that the plaintiff had made a sufficient jurisdictional showing under § 2307.382(A)(6) to survive a motion to dismiss.  *Id.* at 647-48.  The court stated that "[b]y allegedly sending 'false, deceptive, or misleading' representations . . . [the defendant] should have reasonably expected that the recipient would have been injured in [Ohio], given that the letter was addressed to an Ohio resident."  *Id.* at 648.

The conduct that Schneider identifies of Nelson is strikingly similar.  While the defendant in *Vlach* disputed the fact that he prepared the written communication, in this case Nelson disputes his knowledge of the location of the letters' recipients.  Here, as in *Vlach*, this factual dispute is insufficient to defeat jurisdiction, and we hold that this remains true under the preponderance-of-the-evidence standard.  As previously discussed, Nelson's argument that he has no knowledge of the locations of the investors belies actual representations made by Nelson.  Nelson explicitly acknowledged that he was involved in the transmission of the investors' names and addresses to the Bank of Butterfield.  It defies logic that Nelson participated in this transmission, but remained

---

**[9]**Such findings are consistent with Ohio state-court decisions. *See, e.g.*, *Kauffman Racing Equip., L.L.C. v. Roberts*, 930 N.E.2d 784, 792 (Ohio 2010) ("When defamatory statements regarding an Ohio plaintiff are made outside the state yet with the purpose of causing injury to the Ohio resident and there is a reasonable expectation that the purposefully inflicted injury will occur in Ohio, the requirements of R.C. 2307.382(A)(6) are satisfied."); *Herbruck v. LaJolla Capital,* No. 19586, 2000 WL 1420282, at *3 (Ohio App. Sept. 27, 2000) ("A fair reading of the complaint and documentary materials shows that Gallison committed tortious acts (alleged as conversion, fraud, and civil conspiracy) outside Ohio, while knowing full well that the stock involved was of an Ohio corporation.").

ignorant of the investors' geographic locations. If true, the only possible explanation is that Nelson intentionally buried his head in the sand, and that cannot save Nelson from being subject to jurisdiction in Ohio. Thus, accepting Nelson's knowledge of the locations of the investors, the case against him is even stronger than in *Vlach* and surpasses muster under the Ohio long-arm statute under a preponderance-of-the-evidence standard.

Accordingly, we hold that there are sufficient facts to conclude Nelson should have reasonably expected that the letters would cause injury in Ohio making the exercise of jurisdiction proper pursuant to OHIO REV. CODE ANN. § 2307.382(A)(6). We now consider whether the exercise of personal jurisdiction over Nelson in Ohio also comports with due process.

### 2. Due Process

Due process requires that a defendant have "minimum contacts . . . with the forum State . . . such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 297 (1980). The presence of such contacts ensures that the exercise of jurisdiction over the defendant "does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). "As a general rule, the sovereign's exercise of power requires some act by which the defendant 'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws . . . . .'" *J. McIntyre Machinery, Ltd. v. Nicastro*, --- U.S. ---, 131 S. Ct. 2780, 2787 (2011) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

There are two forms of personal jurisdiction: general and specific. *Indah v. U.S. S.E.C.*, 661 F.3d 914, 920 (6th Cir. 2011). General jurisdiction is found where contacts "are so continuous and systematic as to render [a foreign defendant] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, --- U.S. ---, 131 S. Ct. 2846, 2851 (2011) (internal quotation marks omitted). Specific jurisdiction "depends on an affiliatio[n] between the forum and the underlying controversy,

principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* (internal quotation marks omitted).

As Schneider claims only specific jurisdiction over Nelson, we employ this Circuit's three-part analysis to determine whether jurisdiction accords with due process. *See S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). To conclude that the exercise of jurisdiction is proper, we must find: (1) purposeful availment "of the privilege of acting in the forum state or causing a consequence in the forum state," (2) a "cause of action . . . aris[ing] from activities" in the state, and (3) a "substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Id.*

### a. Purposeful Availment

"The purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Citizens Bank v. Parnes*, 376 F. App'x 496, 502 (6th Cir. 2010) (unpublished opinion) (internal quotation marks omitted) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). "We have held previously that purposeful availment may exist when a defendant makes telephone calls and sends facsimiles into the forum state and such communications 'form the bases for the action.'" *Intera Corp. v. Henderson*, 428 F.3d 605, 616 (6th Cir. 2005) (quoting *Neal v. Janssen*, 270 F.3d 328, 332 (6th Cir. 2001)).

The two letters that Schneider received in Ohio "form the bas[i]s for the action" at issue. *See id.* However, the magistrate judge's report and recommendation took issue with Schneider's failure to demonstrate that the letters induced reliance or established "any course of conduct between the parties." R. 28 (Report and Recommendation at 11). We agree with Schneider that the allegations contained in the complaint sufficiently plead reliance. Schneider's complaint clearly sets out that he relied on the representations in Nelson's letter that Nelson was working to return the funds to

Schneider and other investors.**10** These representations were false and misleading. As Nelson admitted during his deposition, he was acting solely in the interest of London Reinsurance and his "goal was to get the funds returned to London Reinsurance" rather than to the individual investors. R. 30 (Ex. B Nelson Dep. at 42:20-44:24). Moreover, the two letters, on their face, indicate that Schneider's reliance was reasonable: their tone and content is reassuring and advisory, projecting the impression that Nelson is acting in the best interests of the investors. The letters imply that Nelson seeks to establish an ongoing relationship with the investors by promising to provide updates "as major developments occur," encouraging investors to contact Nelson with questions, and stating that Nelson will be "as responsive as possible." R. 30 (Ex. C, Letter dated Sept. 29, 2003 at 3). These representations, indicative of an intent to establish an ongoing contact, are exactly the kind of conduct recognized to constitute purposeful availment for due-process purposes. *See Burger King*, 471 U.S. at 473.

Thus, it is clear to us that had Nelson himself mailed the letters to Schneider knowing they would reach Schneider in Ohio, there would be "purposeful availment" to satisfy due process. *See Neal*, 270 F.3d at 332 ("[T]he actions of sending false information into Tennessee by phone and fax had foreseeable effects in Tennessee and were directed at individuals in Tennessee."); *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1170 (6th Cir. 1988) (holding threatening letters and phone calls to plaintiff in Ohio satisfied due process). The issue we must decide is whether either of two complicating facts alters this conclusion: (1) that Nelson did not physically mail the letters himself; and (2) that Nelson contends there is no direct evidence that Nelson knew the letters would reach Ohio.

First, the fact that Nelson did not personally mail the letters has no impact on the due-process analysis. This not an instance where letters a defendant drafted reached an out-of-state plaintiff by "fortuitous" misfortune or "attenuated" circumstances. *Cf. World-Wide Volkswagen*, 444 U.S. at 295. Nelson, by his own admission, drafted the

---

**10**Moreover, the fact that Schneider actually followed the instructions given to him in the letters, by mailing the requested information to Hardesty as instructed, provides tangible corroboration of Schneider's reliance.

letters at Hardesty's request knowing that Hardesty almost certainly would then mail the letters to investors.[11] Given Nelson's intimate involvement in the creation of the letters and his knowledge of their intended purpose, the fact that Hardesty rather than Nelson mailed the letters does not make Nelson's actions any less purposefully directed at the recipient investors. *See Koch v. Local 438, UAW*, 54 F. App'x 807, 811-12 (6th Cir. 2002) (unpublished) (finding personal jurisdiction lacking over one defendant where "her lack of leadership in [the relevant] events [made] her actions less purposefully directed at the plaintiff" but finding personal jurisdiction over the defendant who "initiated the process" by directing someone to write the defamatory letter and participated in the decision to then send that letter). By drafting and providing Hardesty with the letters for distribution, Nelson was the key actor in directing the harm inflicted on the recipients. *See id.*; *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 552 (6th Cir. 2007) (discussing importance of which party initiated contacts to purposeful availment analysis).

Second, despite Nelson's contentions to the contrary, there is sufficient evidence that Nelson knew, or at least should have known, that the letters were bound for an investor in Ohio. In the first "To Whom It May Concern" letter, Nelson wrote that "we assembled a package that included audited financials on Provincial Insurance, Ltd." that "included the name, address, and contact information for each insured or medical practice" to be sent to the Bank of Butterfield in aid of recovery of the funds. R. 30 (Ex. C, Letter dated Sept. 29, 2003 at 2). This is a clear statement by Nelson that he had personal knowledge of the names and addresses of the investors, or at least access to that information at his fingertips. Nelson cannot now renege on this representation for the purpose of avoiding jurisdiction in Ohio. Under the preponderance-of-the-evidence standard, this admission is sufficient to establish that Nelson knew where the various investors were located. Accordingly, Schneider has demonstrated that Nelson purposefully availed himself of the benefits and burdens of the State of Ohio satisfying

---

[11]In fact, Nelson has presented no alternative explanation as to why Hardesty would have requested that Nelson draft the letters in the first place.

the first prong of the due-process analysis under the preponderance-of-the-evidence standard.

### b.  Arising From

The second requirement is that the plaintiff's cause of action arise from the defendant's contacts with the state.  This requirement is subject to a "lenient standard," and we are without doubt that Schneider's claims against Nelson satisfy it.  *See Bird*, 289 F.3d at 875.  As previously explained, the dispute at issue unequivocally "arises from" the two letters that Nelson wrote and Schneider received.  Those letters, that Schneider received, read, and relied upon in Ohio, form the basis for Schneider's allegations that Nelson furthered the fraud perpetrated against Schneider.  Accordingly, the second prong of the analysis is met.

### c.  Substantial Connection

The third requirement is that the defendant have a sufficiently substantial connection to the forum such that the exercise of jurisdiction is not unreasonable. "[W]here, as here, the first two criter[ia] are met, 'an inference of reasonableness arises' and 'only the unusual case will not meet [the substantial connection] criteri[on].'" *Air Prods. & Controls, Inc.*, 503 F.3d at 554 (quoting *Theunissen v. Matthews*, 935 F.2d 1454, 1461 (6th Cir. 1991)).  "In determining whether the exercise of jurisdiction is reasonable, the court should consider, among others, the following factors:  (1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the policy."  *Id.* at 554-55.

While defending this matter in Ohio imposes a burden on Nelson, we cannot conclude that this burden creates an "unusual case" where the "inference of reasonableness" should be abandoned.  *See Youn v. Track, Inc.*, 324 F.3d 409, 420 (6th Cir. 2003).  Moreover, Ohio has an interest in ensuring that its residents have adequate recourse for harms inflicted by nonresidents, and requiring Schneider to litigate this dispute in Utah would impose a substantial burden on him.  *Cf. Nationwide Mut. Ins. Co.*

*v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 797 (6th Cir. 1996) (noting concern not implicated where plaintiff is large corporation that "can easily travel to the defendant's home jurisdiction to seek redress").  "Because there is an inference of reasonableness when the first two *Southern Machine* prongs are satisfied, and because there are no considerations put forward by [Nelson] to overcome or contradict that inference, the exercise of jurisdiction is reasonable under the circumstances of this case." *Air Prods. & Controls, Inc.*, 503 F.3d at 555.

Accordingly, the exercise of personal jurisdiction over Nelson in Ohio comports with due process.

## III.  CONCLUSION

Because we conclude that the exercise of jurisdiction both comports with Ohio's long-arm statute and due process, we **REVERSE** the judgment of the district court and **REMAND** for further proceedings consistent with this opinion.